**In re Petition for DISCIPLINARY ACTION AGAINST Jo M. FAIRBAIRN, a Minnesota Attorney, Registration No. 28137.**

No. A10–0977.

Supreme Court of Minnesota.

Sept. 14, 2011.

Martin A. Cole, Director, Cassie Hanson, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Allen I. Saeks, Leonard, Street and Deinard Professional Association, Minneapolis, MN, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility ("the Director") filed a petition for disciplinary action against respondent Jo M. Fairbairn for both the intentional and unintentional misappropriation of client trust account funds. After a hearing on the petition, the referee recommended a 6–month suspension, a prohibition on access to client trust funds, and payment of $900 in costs. The Director disputes several of the referee's

findings of facts, the referee's failure to find aggravating factors, and the recommended sanction. The Director argues that Fairbairn should be disbarred. Fairbairn admits she intentionally misappropriated funds and agrees with the referee's recommended sanction of a 6–month suspension, but disputes the referee's finding that she was not entitled to mitigation on the basis of a severe psychological disorder. We suspend Fairbairn from the practice of law for a minimum of 18 months.

For most of her legal career, Fairbairn has been a shareholder in the intellectual property law firm of Kinney & Lange, P.A. (the "firm"). Since 2006 or 2007, Fairbairn has also been the firm's treasurer, with primary responsibility for the firm's client trust and operating accounts.

In 2008, the firm suffered the effects of the economic recession and lost client revenue. On October 1, 2008, Fairbairn transferred $25,000 from the firm's client trust account to the firm's operating account. Two days later, Fairbairn transferred another $35,000 from the client trust account to the operating account. Without the two transfers, the firm's operating account would have been overdrawn on October 3. The transfers, however, created a $60,000 shortage in the trust account. On October 31, 2008, Fairbairn transferred $25,000 from the firm's operating account back to the client trust account. Two months later, Fairbairn transferred another $35,000 from the firm's operating account to the client trust account in order to eliminate the shortage in the firm's trust account.

However, between January 5 and February 2, 2009, Fairbairn transferred an additional $84,000 from the firm's client trust account to the firm's operating account, leaving only a $3,219.37 balance in the trust account. The trust account became overdrawn on February 27, 2009, when the firm attempted to transfer funds from the client trust account to the firm's operating account.

U.S. Bank (the "Bank") notified the firm of the February 27, 2009, overdraft by written notice. Under Minn. R. Prof. Conduct 1.15(k)–($l$), an overdraft in a lawyer trust account is also promptly reported by the financial institution to the Office of Lawyers Professional Responsibility; the Director's office received a copy of the Bank notice on March 5, 2009. After transferring $4,000 to the client trust account on February 24, 2009, Fairbairn transferred an additional $80,000 from the firm's operating account to its client trust account between March 2 and March 10, 2009. By March 10, all of the money transferred from the client trust account to cover the firm's operating expenses had been returned to the trust account.

Shortly after making the final transfer to reimburse the trust account in full for the misappropriation, Fairbairn received a letter from the Director requesting an explanation for the overdraft in the trust account. Fairbairn provided the Director with the firm's books and records associated with the client trust account. The Director's audit of the firm's accounts revealed Fairbairn's unauthorized transfers from the client trust account. The Director also discovered a shortage of $1,944 that predated Fairbairn's responsibility for the account and two instances in which checks issued to a client from the trust account exceeded the amount to which the client was entitled, resulting in the inadvertent misappropriation of other client funds to cover the excess amounts disbursed.

The Director filed a petition for disciplinary action against Fairbairn, alleging that she violated Minn. R. Prof. Conduct

1.15(a)[1] and 8.4(c)[2]. In her answer, Fairbairn admitted that she made the transfers but asserted several mitigating factors, including: (1) a severe psychological disorder, (2) extreme stress, (3) full restitution, (4) lack of harm, (5) remorse, (6) cooperation with the investigation, (7) contributions to the legal community, and (8) no prior disciplinary history.

At the disciplinary hearing, Fairbairn again admitted making the transfers. Fairbairn presented the deposition testimony of her psychiatrist, Dr. Karen Dickson, who stated that Fairbairn had been treated for recurrent major depression, with periodic breakthroughs of very severe depression, for 21 years. Fairbairn also called as a witness her therapist, Rosemary Martin, who testified that Fairbairn had an adjustment disorder and major depression with underlying post-traumatic stress attributes resulting from childhood abuse and trauma. Fairbairn testified to stressors in her personal and professional life existing at the time of her misconduct. Fairbairn stated that her older sister's suicide three years earlier at the age of 59 affected her because, at the time of the misappropriation, Fairbairn was approaching age 59. Fairbairn further testified that, during the time of the misconduct, she took care of her daughter and infant grandchild because her daughter could not lift the baby following a caesarean birth. Fairbairn also explained that she suffered from additional stress as a result of a condition that required her to take medication that is dangerous if taken incorrectly.

The referee found that Fairbairn had violated Minn. R. Prof. Conduct 1.15(a)

and 8.4(c). The referee found no aggravating factors. The referee made several findings of fact that supported mitigating circumstances, but expressly listed only one—that the conduct was unlikely to happen again—as a mitigating factor. The referee recommended that Fairbairn be suspended from the practice of law for six months and permanently prohibited from handling client trust accounts.

## I.

The Director challenges the following finding of fact by the referee: "The transfers from the trust account to [the] K & L firm account were for the benefit of the firm and thereby provided incidental benefit to the Respondent. The transfers were not primarily for the benefit of Respondent."

The referee requested a transcript of the proceedings, a copy of which was timely filed with the court. As a result, the referee's findings in this matter are not conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). Instead, we review the referee's findings, as well as the referee's failure to make specific findings, for clear error. *In re Mayne*, 783 N.W.2d 153, 158 (Minn. 2010) (reviewing the referee's findings for clear error); *In re Albrecht*, 779 N.W.2d 530, 535 (Minn.2010) (reviewing the referee's absence of specific findings for clear error). Findings are clearly erroneous if, after review, we are "left with the definite and firm conviction that a mistake has been made." *Albrecht*, 779 N.W.2d at 535–37 (quoting *In re Strid*, 551 N.W.2d 212, 215 (Minn.1996)) (internal quotation

---

1. "All funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts." Minn. R. Prof. Conduct 1.15(a).

2. "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Minn. R. Prof. Conduct 8.4(c).

marks omitted). A referee's findings will be upheld if they are supported by the evidence. *Id.*

Fairbairn testified that it is Kinney & Lange's practice to request that smaller clients, as well as new clients and clients with a poor payment record, advance funds to the firm for filing, maintenance, and other fees payable to the United States Patent and Trademark Office or to comparable agencies in foreign countries. For larger clients, however, the firm paid filing and other fees to the Patent and Trademark Office without requiring such clients to advance the funds.

According to the undisputed evidence before the referee, the balance in the Kinney & Lange operating account at the end of the day on September 30, 2008, was approximately $43,500. The following morning, Fairbairn transferred $25,000 from the firm's client trust account to the firm's operating account. On October 3, Fairbairn transferred another $35,000 from the firm's client trust account to the firm's operating account. Between October 1 and October 3, checks cleared the firm's operating account payable to the Patent and Trademark Office, the Minnesota Department of Revenue, the Internal Revenue Service, various employees of the firm, and the 312 Partnership (the entity owned in part by Fairbairn and her husband, from which the firm leased the building). Without the transfers of the misappropriated funds from the firm's client trust account, the firm's operating account would have been overdrawn on October 3.

Similarly, according to the uncontroverted evidence before the referee, the balance in the firm's operating account at the end of the day on January 2, 2009, was $62,973.95. On Monday, January 5, Fairbairn transferred $25,000 from the firm's client trust account to the firm's operating account. Fairbairn subsequently trans-

ferred another $30,000 from the firm's client trust account to the firm's operating account on January 7. Between January 2 and January 7, checks cleared the operating account payable to the Patent and Trademark Office, the Minnesota Department of Revenue, the Internal Revenue Service, various employees of the firm, and the 312 Partnership. Without the transfers of misappropriated client trust funds, the operating account would have been overdrawn.

Fairbairn testified that she determined the amount of funds to transfer from the firm's trust account by reviewing the obligations coming due to ensure that the operating account had sufficient funds to cover these obligations. Fairbairn testified that she was particularly concerned about whether the firm's operating account had sufficient funds to cover any checks written to the Patent and Trademark Office. According to Fairbairn, a check returned for insufficient funds from the Patent and Trademark Office could result in the loss of a client's patent rights, which could constitute malpractice and result in damages in the millions of dollars for clients who lost their patent rights.

In addition, as the person responsible for ensuring that employee and employer withholding taxes were paid to the Internal Revenue Service and to the Minnesota Department of Revenue, Fairbairn personally faced potential civil and criminal liability if the taxes were not paid in accordance with law. *See* 26 U.S.C. § 6672(a) (2006) (imposing a penalty upon "[a]ny person required to collect, truthfully account for, and pay over any tax" who willfully fails to do so); 26 U.S.C. § 7202 (2006) (authorizing a fine of not more than $10,000 and imprisonment for not more than 5 years for willful failure to collect, account for, and pay over taxes); Minn.Stat. § 270C.56, subd. 1 (2010) (imposing personal liability

for nonpayment of employer withholding taxes and applicable penalties and interest). Fairbairn therefore personally benefited from the misappropriation because the transfers shielded her from personal liability for failing to pay the requisite taxes.

Fairbairn also directly and personally benefited from the firm's payment of rent to its lessor, 312 Partnership, which held the mortgage on the property and in which Fairbairn and her husband were partners. Accordingly, the referee's finding that Fairbairn benefited only incidentally from her misappropriation of client trust funds was clearly erroneous.

## II.

■ We turn now to the appropriate sanction for Fairbairn's misconduct. The referee recommended a 6–month suspension and a prohibition on handling firm trust accounts. Fairbairn agrees with the referee that a 6–month suspension is appropriate, but the Director argues that disbarment is the appropriate sanction.

■ Although we give "significant weight" to the referee's recommended discipline, we are " 'the sole arbiter of the discipline to be imposed.' " *Albrecht*, 779 N.W.2d at 540 (quoting *In re Singer*, 541 N.W.2d 313, 315 (Minn.1996)). The purpose of disciplinary sanctions is not to punish the attorney, but rather "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *Id.* (quoting *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.2004)) (internal quotation marks omitted). We consider four factors when determining the appropriate discipline: "1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession." *Id.*

(citation omitted) (internal quotation marks omitted). We also weigh "both the aggravating and the mitigating circumstances of the particular case" and examine "similar cases in an effort to impose consistent discipline." *Id.* Considering all of these factors, we conclude that an 18–month suspension from the practice of law is the appropriate discipline for Fairbairn's misconduct.

### *Nature of the misconduct.*

■ The misconduct here is the intentional and unintentional misappropriation of client trust account funds, which usually warrants disbarment. *See In re Garcia*, 792 N.W.2d 434, 444 (Minn.2010) ("The lack of mitigating circumstances surrounding Garcia's misappropriation compels disbarment."); *In re Rooney*, 709 N.W.2d 263, 268 (Minn.2006) ("Misappropriation of client funds constitutes serious misconduct that generally warrants disbarment."). Additionally, "even unintentional misappropriation as the result of poor accounting practices may be grounds for discipline." *In re Kinnunen*, 502 N.W.2d 773, 775 (Minn.1993).

■ Citing *Black's Law Dictionary*, Fairbairn argues that her misconduct constituted "borrowing," and not "misappropriation," because she paid the funds back to the client trust account and did not use the money for her own purposes. We disagree. "An attorney misappropriates client funds whenever the funds are not kept in trust and are used for a purpose other than one specified by the client." *In re Brooks*, 696 N.W.2d 84, 88 (Minn.2005). Fairbairn has admitted that she intentionally transferred funds from the firm's client trust account to the firm's operating account, that the transfers were not "attributed to any specific clients" and were "made without the client's knowledge and consent," and that she used the "funds for

purposes other than specified by the client." It is thus both "technically" and legally correct to refer to Fairbairn's misconduct as the intentional misappropriation of client trust funds. *See also In re Gubbins*, 380 N.W.2d 810, 812 (Minn.1986) (" '[B]orrowing' from client funds, no matter how temporary or no matter how seemingly 'safe,' is misappropriation and is not to be countenanced.").

Fairbairn further argues that her actions constitute "borrowing" because the bulk of the funds transferred from the firm's client trust account represented payment for attorney fees to which the firm would eventually be entitled, and reimbursed the firm for advances of out-of-pocket expenses paid on behalf of clients. But Fairbairn testified that it was only the firm's newer and smaller clients that were required to pay advances for filing and other administrative expenses associated with patent applications; the firm's larger clients were not required to advance money to the firm for these expenses. We therefore disagree with Fairbairn's characterization of her actions as "borrowing" because Fairbairn misappropriated funds from the firm's smaller clients in order to pay the expenses of the firm's larger clients, all without the knowledge or consent of any of the affected clients.

*Cumulative weight of the violations.*

In determining the appropriate sanction, we also consider the cumulative weight of the violations. In assessing the cumulative weight of the violations, we distinguish "a brief lapse in judgment" or "a single, isolated incident" of misappropriation from multiple instances of misappropriation occurring over a substantial amount of time or involving significant amounts of money. *See In re Wentzel*, 711 N.W.2d 516, 521 (Minn.2006) (concluding that 30 separate instances of misappropriation that lasted over 2 years and created a

trust account shortage of $88,000 was "not a single isolated incident or a brief lapse in judgment"); *Rooney*, 709 N.W.2d at 269 (stating that 17 separate instances of misappropriation over the course of a year was "not a single, isolated incident or a brief lapse in judgment"). Here, Fairbairn committed six acts of intentional misappropriation totaling $144,000 and two acts of unintentional misappropriation over the course of nearly thirteen months. Consistent with case law, we conclude that Fairbairn's multiple acts of misappropriation coupled with the large sums of money misappropriated from client trust accounts constitute more than a "brief lapse in judgment" or a "single isolated incident."

*Harm to the public and the legal profession.*

Misappropriation of any kind, by its very nature, harms the public at large. *Rooney*, 709 N.W.2d at 270. Misappropriation also harms the legal profession because an attorney's misuse of funds "entrusted to an attorney as a fiduciary for his clients is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *Id.* Fairbairn's misappropriation of client funds thus constituted a breach of her duty to the public and the legal profession.

In this case, however, Fairbairn's clients did not suffer any direct financial harm because Fairbairn returned the misappropriated funds to the client trust account before any clients were entitled to payment of funds from the client trust account. In fact, the Director concedes that Fairbairn returned the funds and that "no client or entity suffered a financial loss" from the misappropriation. The lack of harm to clients from Fairbairn's misconduct is a factor that informs our determination of the appropriate sanction. *See, e.g., In re Coleman*, 793 N.W.2d 296, 308

(Minn.2011); *In re Overboe,* 745 N.W.2d 852, 867 (Minn.2008).

*Presence of aggravating and mitigating factors.*

Finally, we consider and weigh the aggravating and mitigating factors in this case. Fairbairn argues that the referee clearly erred in failing to find a number of mitigating factors, including the presence of a severe psychological disorder and extraordinary stress, recognition of her extensive contributions to the community, and her lack of a disciplinary history and selfish motive for the misappropriation. Fairbairn also points to her sincere remorse, the lack of harm to the firm's clients, and complete restitution to the victims as other factors that mitigate her wrongful conduct. We consider Fairbairn's arguments regarding each of these mitigating factors below.

*Severe psychological disorder.*

A lawyer seeking mitigation for intentional misconduct on the basis of a severe psychological disorder must prove by clear and convincing evidence that:

(1) the lawyer suffered from a severe psychological disorder;

(2) the psychological disorder caused the misconduct;

(3) the lawyer is undergoing treatment and is making progress toward recovery;

(4) the recovery has arrested the misconduct; and

(5) the misconduct is not likely to recur.

*Mayne,* 783 N.W.2d at 158 (citing *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn. 1983)). To fulfill the causation requirement under *Weyhrich,* an attorney's severe psychological disorder must directly cause the misconduct. *Id.* at 160. Indirect causation, on the other hand, "is not enough to justify a finding of causation under *Weyhrich.*" *Id.*

The referee found that Fairbairn suffers from depression and has been treated for depression for more than 22 years. The referee further found that, although Fairbairn's depression "may have been a factor" in her behavior, it "was not the cause of it." The referee therefore declined to find that Fairbairn's depression was a mitigating factor.

Fairbairn contends that she proved each of the *Weyhrich* factors by clear and convincing evidence. We disagree. Fairbairn's psychologist testified, and the referee found, that the economic downturn and rising rental payments for the building put Fairbairn's firm under financial pressure, which implied that Fairbairn's concern for her financial well-being, rather than her depressive disorder, was the cause of her misconduct. Fairbairn's psychologist further testified that Fairbairn's disorder would not "cause someone not to know the difference between wrong and right," would not "cause someone to engage in [a] dishonest act," and would not "cause ... Fairbairn to misappropriate client funds." A report by Fairbairn's psychiatrist in February 2009 indicated that Fairbairn was "doing well." At the time of the misconduct, Fairbairn was undergoing treatment, was on medication, and was providing competent representation to her clients. Based on the foregoing evidence, we cannot say that the referee clearly erred when he concluded that Fairbairn's depression was not a direct cause of her misconduct.[3] Because Fairbairn has not satisfied the causation requirement

---

**3.** The referee erred, however, when he concluded that Fairbairn's intentional misconduct was mitigated by the fact that the misconduct was "unlikely to happen again." Unlikelihood of recurrence, without satisfying the remaining *Weyhrich* factors, is not a mitigating factor. *Mayne,* 783 N.W.2d at 161.

of *Weyhrich,* it is unnecessary for us to address the remaining *Weyhrich* factors. Fairbairn is therefore not entitled to mitigation based on a severe psychological disorder.

### Extraordinary stress.

■ We have held that "extreme stress" or "extraordinary stress" can be a mitigating factor. *Mayne,* 783 N.W.2d at 161–62; *Rooney,* 709 N.W.2d at 272. Fairbairn claims that extremely stressful events, in conjunction with her psychological disorder, contributed to her misconduct and therefore should be considered as a mitigating factor by this court.

■ Fairbairn contends that her firm was facing cash flow problems from the economic recession, and that as the firm's treasurer and shareholder, she was actively involved in finding available funds to cover a $3 million balloon payment in connection with the mortgage on the land where the firm was located. However, neither personal financial pressures nor financial pressures facing an attorney's firm mitigate intentional misappropriation. *See, e.g., Rooney,* 709 N.W.2d at 272 ("An attorney's personal financial difficulties, however, do not mitigate in misappropriation cases and can never justify the misappropriation of client funds."); *In re Parks,* 396 N.W.2d 560, 563 (Minn.1986) ("While it is doubtful whether an attorney's financial difficulties alone will ever constitute a mitigating circumstance to disbarment when he or she has converted client funds, in the instant case, the proof of such claim of financial destitution fell far short of the clear and convincing evidence standard.").

■ The referee nonetheless clearly erred in this case by failing to address and find that "extreme stress" was a mitigating factor. Like the attorney in *Rooney,* Fairbairn was facing extraordinary personal stress in her life. Fairbairn was suffering from depression, and her older sister had committed suicide when she was around Fairbairn's age. Moreover, Fairbairn testified that she was required to take care of her daughter and infant grandchild unexpectedly when her daughter experienced complications from a caesarean delivery. Fairbairn was also prescribed powerful medications that could be dangerous if taken incorrectly. In light of the extreme stress in Fairbairn's personal life, we conclude that the referee clearly erred when he failed to find "extraordinary stress" as a mitigating factor in this case. *Rooney,* 709 N.W.2d at 272. As in *Rooney,* turmoil in Fairbairn's personal life constitutes "a mitigating factor even without proof that the turmoil caused the misconduct." *Id.* The extraordinary stress experienced by Fairbairn at the time of the misconduct therefore constitutes a mitigating factor.

### Remorse.

■ "Whether an attorney is remorseful for [her] misconduct is an important issue in an attorney discipline case," and a referee should "make some factual finding regarding ... remorse" because remorse can be a mitigating factor in certain circumstances. *In re Albrecht,* 779 N.W.2d 530, 538 (Minn.2010). The referee erred by failing to make any findings regarding whether Fairbairn was remorseful for her misconduct. *See id.* (stating that case law requires a referee to make some factual finding regarding remorse). The Director argues that, even though the referee made no findings on remorse, we should treat Fairbairn's lack of remorse as an aggravating factor because Fairbairn remains "adamant that she did not misappropriate client funds" and persists "in claiming that she only borrowed client money." We disagree.

■ Fairbairn acknowledged that her actions were wrongful, testified that she

realized that her actions were "just not right" and "horrible," and testified that she could not believe that she committed the wrongful acts. Based on our careful review of the record, we conclude that Fairbairn is remorseful for her misconduct and is entitled to mitigation on that basis.

### Contributions to the community.

"An attorney's pro bono legal work, volunteer activities, and good character can ... be mitigating factors in misappropriation cases." *Rooney*, 709 N.W.2d at 271. But they "do not militate against the imposition of discipline in matters of serious ethical misconduct." *Id.* (quoting *In re Franke*, 345 N.W.2d 224, 229 (Minn.1984)) (internal quotation marks omitted). Fairbairn argues that she is entitled to mitigation on the basis of her volunteer work and contributions to the legal community.

For support, Fairbairn points to the fact that she: (1) has formally and informally mentored law students, (2) has contributed "up to 750 hours of CLE teaching and preparation" in the last 30 years, (3) has presented seminars for the local bar associations and for the American Bar Association, (4) has given speeches on trademark law, (5) has worked actively to encourage diversity in her firm, (6) was one of the founding members of Minnesota Women Lawyers association, and (7) was twice the chairperson of the trademark division of the Minnesota State Bar Association. Fairbairn relied solely on her own testimony to establish her contributions to the community and the legal profession.

Based on the record, we cannot say that Fairbairn's contributions to the legal community are so far above and beyond what is expected of an attorney in her position that the referee's failure to find her contributions to the community as a mitigating factor was clear error. *See Albrecht*, 779 N.W.2d at 539 (concluding that an attorney's "long list of volunteer activities" was insufficient to demonstrate that the attorney had "done more than is generally expected of any attorney" (internal quotation marks omitted)). Accordingly, Fairbairn's contributions to the community and the legal profession do not constitute a mitigating factor.

### Lack of prior disciplinary history.

We recently held that an attorney's lack of prior disciplinary history is not a mitigating factor, but instead constitutes the absence of an aggravating factor. *In re Rebeau*, 787 N.W.2d 168, 176 (Minn. 2010); *In re Aitken*, 787 N.W.2d 152, 162 (Minn.2010). In this case, the referee mentioned Fairbairn's lack of prior disciplinary history in one of his factual findings and the Director does not dispute the referee's factual finding, which finds support in the record. Accordingly, even though Fairbairn's lack of disciplinary history is not a mitigating factor, we note that she does not have a disciplinary history that aggravates her misconduct.

### Complete restitution.

We have recognized in numerous cases that complete restitution of misappropriated funds can constitute a mitigating factor so long as the restitution is not prompted by an attorney's fear of getting caught. *See, e.g., In re Berg*, 741 N.W.2d 600, 605 (Minn.2007); *Rooney*, 709 N.W.2d at 271. In this case, the referee found that "[t]he transfers from the trust account were reimbursed in full before [Fairbairn] was notified of the investigation by the [Director]." Based on that finding and the fact that the Director concedes that Fairbairn has "completed restitution of the funds," the referee clearly erred in failing to consider complete restitution as a mitigating factor.

*Lack of financial harm.*

Lack of financial harm to clients can constitute a mitigating factor in cases involving misappropriation of client funds. *Mayne*, 783 N.W.2d at 161; *Berg*, 741 N.W.2d at 604–06. The Director concedes that Fairbairn is entitled to mitigation on the basis that no client has suffered any prejudice or damage from Fairbairn's misappropriation from the client trust account. The record supports the referee's finding that the misappropriated funds "were reimbursed in full before [Fairbairn] was notified of the investigation" into her misconduct. Thus, the referee's failure to specifically conclude that lack of harm was a mitigating factor for Fairbairn's misconduct was clearly erroneous.

*Selfish motive.*

An attorney's selfish or dishonest motives may aggravate misconduct. *See, e.g., In re Garcia*, 792 N.W.2d 434, 443–44 (Minn.2010) (finding that an attorney demonstrated selfish or dishonest motives when he misappropriated funds to pay country club fees); *In re Benson*, 431 N.W.2d 120, 123–24 (Minn.1988) (concluding that an attorney demonstrated "dishonest and selfish motives" when he stole the contents of his vulnerable client's safe deposit box, attempted to sell her bonds, and stole silver from her townhouse). On the other hand, we have upheld findings by a referee that an attorney who misappropriated client funds and "intended only to temporarily borrow his clients' funds, not to permanently defraud his clients," did not have a selfish motive. *See Rooney*,

709 N.W.2d at 272 (citing *ABA Standards for Imposing Lawyer Sanctions* § 9.32 (1991) (stating that the lack of a dishonest or selfish motive is a possible mitigating factor)). Fairbairn points out that her other actions, such as making loans to the firm from her personal funds and paying herself and her husband "an unusually modest" salary during the time period, demonstrate a general lack of selfishness.

Fairbairn's conduct in this case was improper and constituted serious misconduct, but the factual record in this case contains sufficiently conflicting evidence regarding Fairbairn's motives that we cannot say that the referee clearly erred in failing to find that a selfish or dishonest motive accounted for the misconduct. We therefore reject the Director's claim that a selfish or dishonest motive constitutes an aggravating factor in this case.[4]

Here, we conclude that in light of the substantial mitigating factors present in this case, disbarment would be overly severe and only serve as punishment for Fairbairn's misconduct. We also conclude, however, that the referee's recommended suspension of six months "does not adequately take into account the duration and magnitude" of the misappropriation. *Rooney*, 709 N.W.2d at 272. Rather, when we balance the severity of Fairbairn's misconduct "against the numerous significant mitigating factors present in [this] case," we hold that the appropriate sanction for Fairbairn's misconduct is an 18–month suspension from the practice of law. *Id.* at 272–73. As we explained in *Rooney*, "[a]n 18–month suspension is a severe sanction

4. Fairbairn obliquely argues that her motives were so unselfish that she may actually be entitled to *mitigation* based on her conduct. However, the referee did not find lack of a selfish motive as a mitigating factor, and there is sufficient evidence in the record that Fairbairn obtained a personal benefit from the misappropriated client funds. For example, the referee found that Fairbairn "benefited from the transfer in the same way as all employees and partners in the firm did," and testimony from the hearing indicates that Fairbairn elected to pay earned fees to the firm and repay a personal loan to herself before repaying the shortage in the client trust account.

that reflects the seriousness of the misconduct in this case and conveys to attorneys and the public the message that misappropriation, even temporary misappropriation, will not be tolerated." *Id.* at 273. Accordingly, we order that:

1. Respondent Jo M. Fairbairn is indefinitely suspended from the practice of law, commencing 14 days from the date of filing of this opinion, with no right to petition for reinstatement for a period of 18 months. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

2. Upon reinstatement, Fairbairn shall be subject to supervised probation for a period of 3 years under such terms as the court may then impose.

3. Fairbairn is permanently prohibited from being an authorized signer on a client trust account.

4. Fairbairn shall pay $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.