In re Petition for DISCIPLINARY AC-
TION AGAINST Tucker Joseph HUM-
MEL, a Minnesota Attorney, Regis-
tration No. 286230.

No. A11–2072.

Supreme Court of Minnesota.

Nov. 6, 2013.

Martin A. Cole, Director, Craig D. Klausing, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Tucker Joseph Hummel, Hopkins, Minnesota, pro se.

## OPINION

### PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed two petitions for disciplinary action against respondent Tucker Joseph Hummel. In these petitions, the Director alleges that Hummel intentionally misappropriated client funds, failed to maintain required trust account books and records, made false statements to the Director, and failed to cooperate with the disciplinary investigation. We referred the matter to a refer-

ee. The referee found that Hummel committed the professional misconduct alleged in the petitions and recommended disbarment as the appropriate discipline. Because of the referee's recommendation, we temporarily suspended Hummel from the practice of law pending final resolution of this matter. *See* Rule 16(e), Rules on Lawyers Professional Responsibility (RLPR). Based on the professional misconduct that Hummel committed, we conclude that disbarment is the appropriate sanction.

### I.

The misconduct in this case falls into three general categories: intentional misappropriation of client funds, trust account violations, and misrepresentation to and failure to cooperate with the Director. We discuss the referee's findings and conclusions with respect to each of these categories in turn.

*Misappropriation.* Hummel represented G.R. in her capacity as personal representative of her mother's estate. On April 4, 2011, Hummel received a check for $10,794.04 on G.R.'s behalf. The check represented the proceeds from the sale of G.R.'s mother's house and was an asset of her mother's estate, in which G.R.'s brother held a partial interest. Hummel deposited the check in his client trust account. On nine separate occasions between April 15 and April 22, 2011, Hummel misappropriated more than $10,000 of G.R.'s funds by initiating transfers and writing checks to himself from the trust account. Hummel also failed to respond to G.R.'s numerous attempts to contact him regarding the distribution of her mother's estate. The referee found that Hummel's misappropriation of G.R.'s funds and failure to communicate with G.R. violated Rules 1.4[1] and

---

1. Minnesota Rule of Professional Conduct 1.4

requires a lawyer to "keep the client reason-

8.4(c),[2] Minnesota Rules of Professional Conduct (MRPC).

*Trust Account Violations.* Hummel's client trust account was overdrawn on January 20, 2011. The bank reported the overdraft to the Director, and the Director wrote to Hummel requesting an explanation for the overdraft and copies of related trust account books and records. Hummel provided the Director with client ledgers and trust account statements that revealed shortages in Hummel's trust account for the period between November 17, 2010, and February 17, 2011. The Director notified Hummel of the shortages. Hummel denied that the account was short, but he was unable either to explain the shortages or to produce accurate trust account books and records.

While investigating the January 20, 2011 overdraft, the Director received notice that Hummel's trust account was overdrawn a second time on April 22, 2011. The referee found that Hummel's failure to maintain required trust account books and records violated Rules 1.15(c)(3)[3] and 1.15(h), MRPC, and Appendix 1 thereto.[4]

*Misrepresentation to and Failure to Cooperate with the Director.* After the Director requested Hummel's explanation for the second trust account overdraft, Hummel wrote a letter to the Director, stating in part:

> I just cannot provide the information you are requesting as my books are messed up due to the loss of data as explained, and frankly because I just really don't have a good handle on the accounting program I am using. With that I again want to stress the issues I have is [sic] 100% related to those issues and not related to abuse of funds.

This statement was false. The second overdraft of Hummel's trust account was a direct result of his misappropriation of G.R.'s funds.

Since March 24, 2011, the Director has repeatedly requested documents from Hummel related to the overdrafts of his trust account and G.R.'s complaint. Hummel has not provided any of this information, and he has not responded to any communications related to the disciplinary charges against him since November 2011. Hummel also did not participate in the evidentiary hearing before the referee.

The referee found that Hummel's false statement to the Director violated Rules 8.1(a)[5] and 8.4(c), MRPC. The referee also found that Hummel's failure to coop-

ably informed about the status of the matter" and "promptly comply with reasonable requests for information" from the client, among other things.

**2.** Minnesota Rule of Professional Conduct 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

**3.** Minnesota Rule of Professional Conduct 1.15(c)(3) requires a lawyer to "maintain complete records of all funds, securities, and other properties of a client or third person coming into the possession of the lawyer and render appropriate accounts to the client or third person regarding them."

**4.** Minnesota Rule of Professional Conduct 1.15(h) provides that "[e]very lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law, and to establish compliance with [the rules]." Appendix 1 to the Minnesota Rules of Professional Conduct provides lawyers with guidance for maintaining required trust account books and records.

**5.** Minnesota Rule of Professional Conduct 8.1(a) states that a lawyer shall not "knowingly make a false statement of material fact" in connection with a disciplinary investigation.

erate with the Director's investigations of G.R.'s complaint and overdrafts in his trust account violated Rule 8.1(b),[6] MRPC, and Rule 25, RLPR.[7]

## II.

■ The appropriate discipline to impose for Hummel's misconduct is the only issue before us. Because neither Hummel nor the Director ordered a transcript of the evidentiary hearing, the referee's findings of fact and conclusions drawn from those facts are conclusive. *In re Nathanson*, 812 N.W.2d 70, 78 (Minn.2012); *accord* Rule 14(e), RLPR. The Director asserted and the referee recommended that disbarment is the appropriate sanction for Hummel's misconduct.

■ The purpose of disciplinary sanctions is "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn.2010). The purpose is not to punish the attorney. *Id.* While "we place great weight on the referee's recommended discipline, we retain ultimate responsibility for determining the appropriate sanction." *In re Ulanowski*, 800 N.W.2d 785, 799 (Minn.2011) (citation omitted) (internal quotation marks omitted). The four factors that we consider when determining the appropriate discipline are the nature of the misconduct, the cumulative weight of the violations, the harm to the public, and the harm to the legal profession. *In re Fairbairn*, 802 N.W.2d 734, 742 (Minn.2011). When deciding the discipline to impose, we look to similar cases for guidance, but we make our determination regarding appropriate discipline on a case-by-case basis after considering any aggravating and mitigating factors. *In re Lundeen*, 811 N.W.2d 602, 608 (Minn.2012).

■ We first consider the nature of Hummel's misconduct. Hummel's most serious violation involved misappropriation of client funds. "[M]isappropriation of client funds alone 'is particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors.'" *In re Voss*, 830 N.W.2d 867, 877 (Minn.2013) (quoting *In re Garcia*, 792 N.W.2d 434, 443 (Minn.2010)). Here, Hummel misappropriated more than $10,000 in client funds. The referee did not find any mitigating circumstances that would weigh in favor of imposing a sanction other than disbarment.[8]

Hummel also failed to maintain required trust account books and records, made false statements to the Director, and failed to cooperate with the disciplinary investigation. Each of these violations constitutes misconduct that warrants discipline. *See, e.g., In re Varriano*, 755 N.W.2d 282, 291 (Minn.2008) ("The failure to maintain

---

6. Minnesota Rule of Professional Conduct 8.1(b) provides that a lawyer must not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority."

7. Rule 25, RLPR, requires any lawyer who is the subject of a disciplinary investigation to comply with reasonable requests for information from the Director or the Director's staff.

8. We sometimes have concluded that the presence of mitigating factors warrants a lesser sanction than disbarment, even in cases involving misappropriation of client funds. *See, e.g., In re Fairbairn*, 802 N.W.2d at 747 (finding that several mitigating factors, including remorse, restitution, lack of harm to clients, and extraordinary personal stress, warranted an 18–month suspension); *In re Rooney*, 709 N.W.2d 263, 272–73 (Minn.2006) (imposing an 18–month suspension in light of several mitigating factors, including restitution, significant contributions to the community, and extraordinary personal stress at the time of the misconduct).

proper books and records warrants discipline as well."); *In re Brooks,* 696 N.W.2d 84, 88 (Minn.2005) (stating that failure to cooperate "with the disciplinary process constitutes separate misconduct warranting discipline"); *In re Ruffenach,* 486 N.W.2d 387, 391 (Minn.1992) (making false statements is "misconduct of the highest order and warrants severe discipline").

In addition to the nature of the misconduct, we consider the cumulative weight of the disciplinary violations when determining the appropriate sanction. *In re Fairbairn,* 802 N.W.2d at 742. In doing so, "we distinguish a brief lapse in judgment or a single, isolated incident of misappropriation from multiple instances of misappropriation occurring over a substantial amount of time or involving significant amounts of money." *Id.* at 743 (citation omitted) (internal quotation marks omitted). Although Hummel's misappropriation of client funds occurred over the course of one week, he took thousands of dollars in nine separate acts of misappropriation during this period. Moreover, Hummel's other violations occurred over the course of several months. Hummel failed to maintain adequate balances in his trust account for at least three months. And he failed to respond to communications regarding his misconduct for nearly two years. Hummel's conduct, therefore, demonstrates not a brief lapse in judgment but rather a pattern of misconduct over an extended period of time.

When determining appropriate discipline, we also assess the harm to the public and to the legal profession. *Id.* at 742. Evaluating the harm to the public and the profession "requires consideration of the number of clients harmed [and] the extent of the clients' injuries." *In re Coleman,* 793 N.W.2d 296, 308 (Minn.2011) (alteration in original) (citations omitted) (internal quotation marks omitted). "Misuse of a client's funds 'is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers.'" *In re Montez,* 812 N.W.2d 58, 69 (Minn.2012) (quoting *In re Rooney,* 709 N.W.2d 263, 270 (Minn.2006)). Hummel's actions caused financial harm to G.R. and her brother, who was not Hummel's client but who had an interest in the proceeds of the sale of his mother's house. Hummel's misconduct with respect to his trust account books and records also could have harmed other clients, as he failed to maintain adequate balances in his client trust account. Moreover, Hummel's misuse of client funds and failure to communicate with his client reflect poorly on the profession as a whole and undermine the public's trust in lawyers.

Finally, we consider any aggravating or mitigating circumstances. *In re Lundeen,* 811 N.W.2d at 608. The attorney against whom discipline is sought bears the burden to allege and prove mitigating circumstances. *Id.* at 608 n. 3. Here, Hummel offered no evidence of mitigating factors. And the referee did not find any aggravating factors. Yet in light of the serious misconduct that Hummel committed and the absence of any mitigating factors, we conclude that disbarment is the appropriate sanction.

Accordingly, we hereby order that:

1. Respondent Tucker Joseph Hummel is disbarred from the practice of law in the State of Minnesota, effective upon the date of filing of this opinion;

2. Hummel shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals); and

3. Hummel shall pay $900 in costs pursuant to Rule 24, RLPR.