PER CURIAM.
*765 The Director of the Office of Lawyers Professional Responsibility filed a petition and supplementary petition for disciplinary action against respondent Boris A. Gorshteyn. The petitions allege numerous acts of professional misconduct, including misappropriation of approximately $382,000 in client funds, abandonment of client matters, settling clients' claims without their knowledge or consent, failing to maintain trust account books and records, and noncooperation with the Director's investigations. Gorshteyn did not file an answer to either petition. Accordingly, we deemed the allegations in both petitions admitted and allowed the parties to file memoranda on the appropriate discipline. Gorshteyn did not file a memorandum or otherwise appear in this matter. The Director asserts that the appropriate sanction is disbarment. We agree.
FACTS
Gorshteyn was admitted to the practice of law in Minnesota in 2012. In October 2017, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action and an amended and supplementary petition for disciplinary action against Gorshteyn. After the Director was unable to personally serve Gorshteyn, we granted the Director's application for suspension under Rule 12(c)(1), Rules on Lawyers Professional Responsibility, and gave Gorshteyn 1 year to file a motion to vacate the suspension and seek leave to answer the petitions. In re Gorshteyn , 902 N.W.2d 922, 923 (Minn. 2017) (order). Gorshteyn did not file such a motion or respond to the petition or supplementary petition.
Because Gorshteyn failed to respond to either petition, we deemed the allegations in the petition and supplementary petition admitted. In re Gorshteyn , No. A17-1635, Order at 1 (Minn. filed Nov. 5, 2018). We ordered Gorshteyn to show cause why he should not be disciplined and invited the parties to file memoranda on the appropriate discipline to be imposed in this case. Id. at 2. Gorshteyn did not comply with our order to show cause, did not submit a proposal regarding the appropriate discipline, and did not otherwise appear in this matter.
In July 2013, Gorshteyn started his own practice, Gorshteyn Law, P.C. Gorshteyn was the owner and managing partner of Gorshteyn Law, and his practice mostly handled personal injury matters. Gorshteyn Law primarily served Somali clients, and many of Gorshteyn's clients needed an interpreter to communicate in English.
In more than 300 paragraphs spanning 60 pages, the petition and supplementary petition set forth detailed accounts of Gorshteyn's extensive professional misconduct between 2014 and 2017. This misconduct was committed against at least 25 clients. We summarize the most relevant misconduct below.
Misappropriation of client funds and other trust-account related misconduct
From 2014 to 2016, Gorshteyn misappropriated approximately $382,000 in client funds from more than 13 clients.[1] He did this by transferring excess fees from his trust account to himself totaling approximately $247,000. In addition, he disbursed *766 or transferred approximately $134,600 in client funds to himself without any relation to earned fees and to which he was not entitled.
Gorshteyn also "failed to disburse from his trust account, or timely disburse from his trust account, numerous clients' funds to or on behalf of the client." Gorshteyn failed to disburse more than 10 clients' funds in a timely manner.
From January 2014 to June 2016, Gorshteyn did not properly maintain trust account check registers, client subsidiary ledgers, trial balance reports, reconciliation reports, and internet transfer memoranda. He also did not annotate many trust account checks and slips with the affected client's name. Gorshteyn routinely disbursed fees to himself, both through internet transfers and checks drawn on the trust account, without adequately documenting the identity of the affected clients. Further, Gorshteyn allowed non-signatories to apply his stamped signature to trust account checks. His failure to maintain adequate records and to provide the Director with the necessary books impeded the Director's ability to perform a complete audit.
Through this conduct, Gorshteyn violated Minn. R. Prof. Conduct 1.15(c)(3), 1.15(c)(4), 1.15(h) as interpreted by Appendix 1, 1.15(j), and 8.4(c).
Pattern of client misconduct involving unauthorized settlements
Gorshteyn also committed misconduct involving unauthorized settlement of client claims. Gorshteyn presented at least 13 clients with powers of attorney but failed to explain the purpose or legal implications of these documents. In one instance, Gorshteyn, or someone in Gorshteyn's office, forged the signature of a client on a power of attorney. In that same matter, Gorshteyn failed to obtain a valid contingent fee agreement. On at least two occasions, Gorshteyn presented fee agreements and powers of attorney written only in English to clients who spoke only limited English. And, in one of those instances, he failed to explain a contingent fee agreement to the client.
Gorshteyn frequently settled or arbitrated cases without the knowledge or consent of the clients.[2] On at least 11 occasions, Gorshteyn entered into settlement negotiations and settled claims without informing his clients or obtaining their consent. Twice, Gorshteyn did not inform his client that he had commenced arbitration proceedings or that an arbitration hearing was taking place. And, on at least three occasions, Gorshteyn failed to inform his client of the arbitration award.
On 15 separate occasions, Gorshteyn failed to notify his client of his receipt of funds from settlements or arbitration awards. Frequently, after engaging in unauthorized settlement negotiations, entering into unauthorized settlements, and failing to apprise his clients of arbitration proceedings and awards, Gorshteyn endorsed checks by relying on improperly obtained, nonexistent, or forged powers of attorney and deposited the funds in his trust account. On at least nine occasions, Gorshteyn endorsed and cashed settlement checks or arbitration award checks by relying on powers of attorney that clients had signed without being informed of their purpose or legal implications. In two instances involving the same client, Gorshteyn endorsed a check with a notation stating he was doing so by a power of attorney although the client had never signed a power of attorney. Gorshteyn also *767 endorsed two client arbitration award checks with a notation stating that he was doing so by a power of attorney, but the power of attorney on which Gorshteyn relied was forged.
On at least 13 occasions, Gorshteyn failed to provide clients with notice of the transfer of client funds from Gorshteyn's trust account to his business account. In at least 10 instances, Gorshteyn failed to timely disburse the proceeds of settlements or arbitration awards. And, on several occasions, Gorshteyn failed to provide his client with a statement showing the distribution of proceeds from settlements and arbitration awards. In addition, Gorshteyn made an unauthorized disbursement of client funds to a clinic in which he had a financial interest.
Gorshteyn routinely failed to communicate with clients regarding the status of their cases. On several occasions, Gorshteyn provided misleading information regarding the status of clients' cases. Gorshteyn failed to adequately communicate with clients in at least 15 different matters. In some cases, after settling no-fault claims, Gorshteyn failed to do any more work on the client's case. On several occasions, Gorshteyn signed a satisfaction of award or release on behalf of the client without client consent. Gorshteyn had a conflict of interest with two clients because they received medical treatment from a clinic in which Gorshteyn had a financial interest. In both cases, Gorshteyn failed to disclose the conflict of interest, did not comply with the requirements for obtaining informed consent to the conflict of interest, and did not comply with the requirements for entering into business transactions with clients.
Through this conduct, Gorshteyn violated Minn. R. Prof. Conduct 1.1, 1.2(a), 1.3, 1.4(a)(1), 1.4(a)(3)-(4), 1.4(b), 1.5(b)-(c), 1.7(a)(2), 1.15(a)-(b), 1.15(c)(1)-(4), 4.1, 5.1(c), and 8.4(c)-(d). In addition, by forging a client's name to a power of attorney, or allowing one of his employees to forge the document, Gorshteyn violated Minn. R. Prof. Conduct 4.1 and 8.4(c), or, in the alternative, either 5.1(a)-(b) or 5.3(a)-(b).
Additional client-related misconduct, including the abandonment of his law practice
Gorshteyn engaged in additional client-related misconduct, including the failure to competently and diligently pursue client claims and the abandonment of his law practice in June 2016. In one client's case, Gorshteyn submitted a petition for no-fault arbitration on behalf of the client but failed to include several thousand dollars in unpaid medical bills in the petition. Gorshteyn failed to amend the no-fault arbitration petition within 30 days of filing it, thereby violating the Minnesota Rules of Arbitration. See Minn. No-Fault Ins. Arb. R. 5(f). As a result of Gorshteyn's negligence and incompetence, the arbitrator ultimately issued an award denying payment of the client's unpaid medical bills.
In another case, Gorshteyn failed to respond-and failed to direct his employees to timely respond-to opposing counsel's discovery request. Instead, he directed an associate attorney "to give priority to making settlement demands in several other client matters, which [Gorshteyn] characterized as 'short term money makers.' " When opposing counsel called a discovery conference regarding the overdue discovery responses, Gorshteyn failed to respond and failed to attend the discovery conference. In the same matter, Gorshteyn did not respond to opposing counsel counsel's letter stating that he would file a motion to compel discovery and request sanctions. Gorshteyn failed to respond to the subsequently filed motion to compel discovery, which was scheduled for hearing, and did *768 not attend the hearing. The court issued an order finding that Gorshteyn Law had failed to properly notify the court of its withdrawal as counsel and ordering the client to respond to discovery requests within 30 days. Gorshteyn failed to relay the court's order to the client, and, as a result, the court dismissed the client's case for failure to comply with its order.
In another case, Gorshteyn failed to file or serve a substitution of attorney when the associate attorney handling the case resigned from her position at Gorshteyn Law. Subsequently, Gorshteyn filed a deficient notice of withdrawal as counsel in the same case, and the court issued an order denying withdrawal. Gorshteyn never responded to or complied with the court's order to correct the withdrawal notice. As a result of Gorshteyn's misconduct, the client's case was dismissed.
In yet another matter, Gorshteyn failed to respond to an insurer's request for information and documentation. After the insurer informed Gorshteyn that it was discontinuing payment for the client's medical bills based on the results of an independent medical examination, Gorshteyn failed to work diligently on the case and eventually abandoned it altogether.
Gorshteyn engaged in incompetent and neglectful representation in several other cases. Gorshteyn settled at least three clients' claims for amounts far less than the clients' medical bills incurred in connection with the injuries. In one case, the injured client was entitled to lost wages, but Gorshteyn failed to make that claim on the client's behalf. Instead, Gorshteyn entered into a settlement that precluded wage-loss recovery and recovery of any additional medical expenses. In another case, Gorshteyn failed to attend an arbitration proceeding and failed to inform the client's previous attorney of his receipt of no-fault proceeds. Another client met with Gorshteyn regarding pursuit of a collection action in California. Gorshteyn failed to inform that client that his collection action could be barred by the statute of limitations. Moreover, Gorshteyn never pursued the collection action and never returned the client's promissory note.
Gorshteyn engaged in numerous acts of dishonesty in addition to those already listed. In several clients' cases, Gorshteyn never disbursed funds awarded or owed to medical providers. Gorshteyn assured one client that all of her medical bills had been paid, but her obligation to one clinic remained unpaid as of the date the Director's petition was filed. And Gorshteyn disbursed $1,000 to another client but failed to inform the client that the disbursement was part of a $13,500 settlement. Gorshteyn signed documents requiring notarization on a client's behalf in one case. In another, he negotiated with medical providers for a reduction in the client's obligations without the client's consent.
In June 2016, Gorshteyn closed Gorshteyn Law and sent an email to employees terminating their employment. In that email, he stated that he would "personally deal with [the] transfer of cases to a different law firm and/or making sure clients receive their folders, discharge letters, etc...." After shuttering his law firm, Gorshteyn failed to competently and diligently oversee the closing of Gorshteyn Law, and he abandoned the firm's clients. Many clients did not receive any notification that Gorshteyn was terminating his representation. Because the law firm's voicemail box was full, clients could not leave messages, and several clients who visited the firm's office found that it was no longer operational. Gorshteyn did not arrange for the forwarding of mail or respond to mail sent to Gorshteyn Law's address. Gorshteyn also failed to withdraw as counsel for multiple clients with pending matters *769 and did not file the required notices of withdrawal of counsel.
In many cases, clients and successor counsel were unable to retrieve client files or contact or locate Gorshteyn. Gorshteyn also failed to return medical records and other important documents related to client matters. In at least 12 cases, Gorshteyn failed to notify clients of the closure of Gorshteyn Law. And, in at least 19 cases, Gorshteyn failed to return client files altogether or failed to timely return them. Several of Gorshteyn's clients retained new counsel. Gorshteyn failed to timely fulfill 12 requests for copies of client files from successor counsel. In at least 8 of those cases, Gorshteyn never provided successor counsel with the requested client files. In addition, on at least one occasion, Gorshteyn was dishonest with successor counsel in failing to disclose that he had previously settled his former client's claim. As noted above, in many cases, Gorshteyn's former clients only learned of a settlement or arbitration award after successor counsel independently obtained that information from third parties.
Through this conduct, Gorshteyn violated Minn. R. Prof. Conduct 1.1, 1.2(a), 1.3, 1.4(a)(3)-(4), 1.4(b), 1.15(c)(2), 1.15(c)(4), 1.16(d), 4.1, 5.1(c), and 8.4(c)-(d).
Failure to cooperate with the Director
From August 2016 through 2017, Gorshteyn failed to adequately cooperate with the Director's investigation of the client complaints pending against him. Gorshteyn failed to adequately respond to the Director's notices of investigation regarding 19 different clients. In many of these cases, Gorshteyn did not provide any response to the Director's notice of investigation or provide any of the requested information.
Between August 2016 and August 2017, Gorshteyn failed to cooperate with several of the Director's requests for information regarding trust account records. Specifically, the Director requested Gorshteyn to provide trust account bank statements, cancelled checks, deposit slips, deposit offsets, and reconstructed check register/general ledger journals from January 2014 through June 2016. Gorshteyn provided only some of the requested trust account records, and many of the records he provided were unintelligible. Gorshteyn provided reconstructed check register/general ledger journals for only part of the time period requested by the Director, which failed to provide client attribution information for much of the activity reflected in bank statements, including online transfers Gorshteyn executed from the trust account to one of his non-trust bank accounts. As a result of Gorshteyn's failure to provide the records requested by the Director, the Director was twice forced to subpoena records from Gorshteyn's bank. Gorshteyn altogether failed to respond to several other requests for information regarding trust account records.
Through Gorshteyn's failure to cooperate with the Director, he violated Minn. R. Prof. Conduct 8.1(b) and Rule 25, Rules on Lawyers Professional Responsibility.
ANALYSIS
I.
Because the allegations in the petition and supplementary petition for disciplinary action against Gorshteyn are deemed admitted, the only issue before us is what discipline we should impose for Gorshteyn's misconduct. In re Swensen , 743 N.W.2d 243, 247 (Minn. 2007). The Director asks us to disbar Gorshteyn "for engaging in a pattern of misappropriation of client funds, settling clients' claims using powers of attorney without clients' knowledge or consent, abandonment of client matters, related trust account improprieties, including substantial shortages, *770 and noncooperation in the Director's investigation and the disciplinary proceedings."
We have the ultimate responsibility for determining what discipline should be imposed for attorney misconduct. In re Matson , 889 N.W.2d 17, 23 (Minn. 2017). The purpose of imposing discipline "is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." In re Rebeau , 787 N.W.2d 168, 173 (Minn. 2010). We consider four factors in determining what disciplinary sanction is appropriate: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." In re Nelson , 733 N.W.2d 458, 463 (Minn. 2007) ; see also Matson , 889 N.W.2d at 23. We also consider any aggravating and mitigating circumstances. In re Albrecht , 779 N.W.2d 530, 540 (Minn. 2010). Finally, we consider "similar cases in an effort to impose consistent discipline." Id.
A.
We first consider the nature of Gorshteyn's misconduct. Gorshteyn's misconduct was both egregious and extensive, with several forms of misconduct that involved at least 25 clients, 13 of whom filed complaints with the Director, either directly, or through counsel. Standing alone, Gorshteyn's misappropriation of almost $382,000 in client funds is grounds for disbarment. We treat misappropriation of client funds as "a particularly serious violation and 'generally disbar attorneys who misappropriate client funds' " in the absence of " 'substantial mitigating circumstances.' " In re Lundeen , 811 N.W.2d 602, 608 (Minn. 2012) (quoting In re Wentzel , 711 N.W.2d 516, 520-21 (Minn. 2006) ); see also, e.g. , In re Garcia , 792 N.W.2d 434, 443 (Minn. 2010). As we discuss below, no mitigating factors exist here.
Gorshteyn also engaged in several other forms of particularly serious misconduct that provide independent grounds for disbarment. Gorshteyn engaged in a pattern of neglect and abandonment involving several clients. "We have repeatedly warned that '[a] continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself' and that more 'extreme' cases involving client neglect and failure to communicate with clients may merit disbarment." In re Rhodes , 740 N.W.2d 574, 578 (Minn. 2007) (alteration in original) (quoting In re Brooks , 696 N.W.2d 84, 87-88 (Minn. 2005) ); accord In re De Rycke , 707 N.W.2d 370, 374 (Minn. 2006).
In addition, Gorshteyn's use of powers of attorney-and in one case, a forged power of attorney-to settle or arbitrate many clients' claims without their knowledge or consent is extremely serious misconduct. Cf. In re Dovolis , 572 N.W.2d 734, 735, 737 (Minn. 1998) (disbarring an attorney whose misconduct included "misappropriate[ing] more than $62,000 from 13 clients over a four-year period by purportedly settling their claims and then forging their signatures on settlement checks and releases without their knowledge or consent"). And Gorshteyn failed to cooperate with the Director's audit and investigation. On its own, noncooperation with the disciplinary process may merit indefinite suspension and, in combination with other misconduct, increases the severity of the sanction. Matson , 889 N.W.2d at 24 ; In re Pitera , 827 N.W.2d 207, 211 (Minn. 2013).
B.
We next consider the cumulative weight of Gorshteyn's misconduct. In determining the cumulative weight of an attorney's disciplinary violations, we "distinguish between a 'brief lapse in judgment' or 'a single, isolated incident' and 'multiple *771 instances of mis[conduct] occurring over a substantial amount of time.' " In re Murrin , 821 N.W.2d 195, 208 (Minn. 2012) (alteration in original) (quoting In re Fairbairn , 802 N.W.2d 734, 743 (Minn. 2011) ).
Here, Gorshteyn's misconduct was neither a brief lapse in judgment nor a single, isolated incident. Id. To the contrary, Gorshteyn engaged in a prolonged pattern of extensive and flagrant misconduct over a 4-year period.
C.
We turn to the harm to the public and the legal profession caused by Gorshteyn's misconduct. We consider the harm to the public and legal profession caused by an attorney's misconduct "by looking to the number of clients harmed and the extent of their injuries." Matson , 889 N.W.2d at 24 ; see also In re Coleman , 793 N.W.2d 296, 308 (Minn. 2011). Gorshteyn caused serious financial harm to numerous clients by misappropriating approximately $382,000 in client funds. These funds were misappropriated from at least 13 clients who filed complaints against Gorshteyn with the Director. Additionally, numerous clients were harmed by Gorshteyn's delays, negligence, abandonment of their cases, settlement of their claims without their knowledge or consent, and failure to return their files in a timely manner.
Gorshteyn's misconduct caused substantial harm to the legal profession. His "[m]isappropriation of client funds is a breach of trust that harms not only the affected client[s] but also the public and the legal profession." Matson , 889 N.W.2d at 24 ; see also In re Brost , 850 N.W.2d 699, 704 (Minn. 2014). Gorshteyn's neglect of clients also "undermines the public's confidence in the legal profession." Matson , 889 N.W.2d at 24 ; see also Albrecht , 779 N.W.2d at 541-42. In addition, Gorshteyn's failure to cooperate with the Director's investigation "harmed the legal profession by undermining the public's confidence in the ability of the profession to self-regulate." Matson , 889 N.W.2d at 24 ; see also Brost , 850 N.W.2d at 705.
D.
We also "weigh aggravating and mitigating factors to determine the appropriate discipline to impose." Matson , 889 N.W.2d at 24. We agree with the Director that three aggravating factors weigh in favor of Gorshteyn's disbarment.[3]
First, many of the clients affected by Gorshteyn's misconduct were vulnerable because they did not speak English and required the use of a translator. We consider the exploitation of vulnerable clients as an aggravating factor. See In re Trombley , 916 N.W.2d 362, 371 (Minn. 2018) ("We have consistently concluded that [the vulnerability of the victim] may aggravate an attorney's misconduct.").
Second, Gorshteyn did not cooperate during the public disciplinary proceedings. Specifically, Gorshteyn did not comply with our order to show cause, did not submit any proposal regarding the appropriate discipline, and did not otherwise appear in this matter. "Although we cannot 'double count' the same acts of noncooperation *772 as both substantive misconduct and an aggravating factor," we may consider Gorshteyn's failure to cooperate in the disciplinary proceedings before us as an aggravating factor. In re Hulstrand , 910 N.W.2d 436, 444 (Minn. 2018) (noting that "[n]o double counting occurred" when "[t]he referee considered [an attorney's] noncooperation before the Director filed a petition to be substantive misconduct" and "the referee found that [the attorney's] noncooperation after the initiation of the public disciplinary proceeding was an aggravating factor"); see also In re Taplin , 837 N.W.2d 306, 313 (Minn. 2013) ("[A] lawyer's failure to cooperate after a petition is filed may be considered an aggravating factor for the misconduct in the petition.").
Third, Gorshteyn had a selfish motive in misappropriating client funds. See Fairbairn , 802 N.W.2d at 747 ("An attorney's selfish or dishonest motives may aggravate misconduct."); Garcia , 792 N.W.2d at 443-44 (treating a selfish or dishonest motive as an aggravating factor). The Director aptly observes that Gorshteyn treated his trust accounts as though they were his checking account and "misappropriated [client] funds without any apparent entitlement or relation to a client matter." In addition to misappropriating excess fees totaling approximately $247,000, Gorshteyn misappropriated $134,600 in client funds that, as the Director notes, "had no relation to earned fees" and were without any apparent connection to a specific client matter. In the absence of any evidence to the contrary, Gorshteyn's flagrant misappropriation of client funds can only be understood as selfish and self-serving acts.
Moreover, no mitigating factors exist for us to consider. Gorshteyn did not respond to the petition or supplementary petition or appear in any manner in these proceedings. See Matson , 889 N.W.2d at 25 ("Because [the attorney] did not file a response and we have deemed the allegations in the petitions admitted, he may not now raise mitigating factors."); see also In re Ladd , 463 N.W.2d 281, 283 (Minn. 1990) ("[T]his court is not an original factfinding body in attorney discipline matters, and respondent's failure to answer the petition with any mitigating circumstances bars our consideration of such issues."). Gorshteyn has failed to establish any mitigating factors.
E.
Finally, we consider similar cases but "ultimately determine the proper discipline 'based on the unique facts and circumstances of each case.' " Matson , 889 N.W.2d at 25 (quoting Rebeau , 787 N.W.2d at 174 ). We have repeatedly disbarred attorneys who misappropriated client funds. See , e.g. , In re Swokowski , 796 N.W.2d 317, 320-23, 328 (Minn. 2011) (disbarring an attorney who misappropriated $1,000 by forging a client's signature on the client's settlement check, without the client's authorization or knowledge, and committed other misconduct); Dovolis , 572 N.W.2d at 735, 737 (disbarring an attorney for multiple acts of misconduct, including the misappropriation of more than $62,000 from 13 clients over 4 years by "settling their claims and then forging their signatures on settlement checks and releases without their knowledge or consent"). Given the amount of client funds Gorshteyn misappropriated and the number of clients he harmed, the only appropriate sanction is disbarment.
CONCLUSION
Accordingly, we order that respondent Boris A. Gorshteyn is disbarred from the practice of law in the State of Minnesota, effective on the date of this opinion. Gorshteyn shall pay $900 in costs under *773 Rule 24(a), Rules on Lawyers Professional Responsibility, and shall comply with Rule 26, Rules on Lawyers Professional Responsibility (requiring notice of disbarment to clients, opposing counsel, and tribunals).
Disbarred.
Concurring, Thissen, J.
CONCURRENCE

The petition and supplementary petition identify 13 clients from whom Gorshteyn misappropriated client funds, but the petitions also state that Gorshteyn misappropriated funds from additional clients without providing a total number of clients affected.

In many cases, Gorshteyn's clients only learned that Gorshteyn had settled or arbitrated their claims after successor counsel independently obtained that information from third parties.

The Director argues that Gorshteyn's failure to make any restitution payment to any client should also be considered an aggravating factor. We have, in the past, considered an attorney's failure to make restitution or refund unearned fees an aggravating factor. See In re Westby , 639 N.W.2d 358, 370 (Minn. 2002), abrogated on other grounds by In re Jones , 834 N.W.2d 671, 680 n.9 (Minn. 2013). But more recently, we clarified that an attorney's failure to make restitution to a client "should not be weighed as an aggravating factor because it duplicates the ... consideration of the harm caused to [the attorney's] clients." See In re Tigue , 900 N.W.2d 424, 432 (Minn. 2017). Accordingly, we do not consider Gorshteyn's failure to make restitution as an aggravating factor.