In re Petition for DISCIPLINARY AC-
TION AGAINST Susanne Marie
GLASSER, a Minnesota Attorney,
Registration No. 272978.

No. A11–2126.

Supreme Court of Minnesota.

June 5, 2013.

Martin A. Cole, Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for petitioner.

Edward F. Kautzer, Ruvelson & Kautzer, Ltd., Saint Paul, MN, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility ("the Director") petitioned for disciplinary action against respondent Susanne Marie Glasser, alleging that she violated Minn. R. Prof. Conduct 8.4(b) based on her conviction of two counts of misdemeanor theft by swindle. Following a hearing on the petition, a referee recommended a public reprimand and supervised probation for a period of five years. The Director disputes several of the referee's findings of fact regarding mitigation and the recommended sanction. The Director asserts that a suspension from the practice of law for a period of 18 months is the appropriate sanction. Glasser admits that her convictions of misdemeanor theft by swindle violated Minn. R. Prof. Conduct 8.4(b) and requests that we impose the discipline recommended by the referee. Based on the professional misconduct Glasser committed and the mitigating factors present, we suspend Glasser from the practice of law for a minimum of 30 days and, upon reinstatement, place her on supervised probation for a period of five years.

■ Glasser was admitted to practice law in Minnesota in 1997. In 2009, the State of Minnesota charged Glasser with three counts of felony theft by swindle. The complaint alleged that Glasser made approximately $31,000 in unauthorized charges on the credit card account of her deceased father. A trial on the felony charges resulted in a hung jury. The case was scheduled for retrial, but the parties reached a plea agreement. Glasser pleaded guilty to two misdemeanor counts of theft by swindle. The district court convicted Glasser of both counts, imposed concurrent sentences of 90 days in jail, and stayed the sentences for one year on the condition that Glasser commit no same or similar conduct. The facts underlying Glasser's convictions are conclusive evidence that Glasser committed misdemeanor theft by swindle. Rule 19(a), Rules on Lawyers Professional Responsibility (RLPR).

The Director filed a petition for disciplinary action against Glasser, alleging

that she violated Minn. R. Prof. Conduct 8.4(b). In her answer, Glasser admitted the violation, but she asserted that she was entitled to mitigation.

At the disciplinary hearing that followed, Glasser called a clinical psychologist who testified regarding Glasser's "severe and chronic" alcohol dependency. Before her sobriety, the psychologist testified, Glasser was a habitual drinker who blacked out almost every night and neglected her disabled child. The psychologist testified that Glasser is currently in "full recovery" and her diagnosis is "alcohol dependence in full remission." The psychologist also testified that Glasser's alcoholism played a role in her misconduct because "alcoholism impairs money management." Because Glasser is in full remission, the psychologist opined that the risk of Glasser committing this misconduct again is "minimal to low to none."

Glasser also called several witnesses who testified about her rehabilitation. The witnesses testified that Glasser was a severe alcoholic for much of her life, but that she has "turned her life around." According to this testimony, Glasser is very serious about addressing her alcoholism and maintains her sobriety through participation in Alcoholics Anonymous and Lawyers Concerned for Lawyers. In addition to meeting with her sponsor, she sponsors other alcoholics. The witnesses and Glasser also testified about other stress-inducing circumstances that were present during the time of Glasser's misconduct. These include the death of her father, raising a child with autism, single-parenting without any child support, having a former husband convicted of criminal sexual conduct, and substantial financial problems.

The referee concluded that Glasser violated Minn. R. Prof. Conduct 8.4(b). The referee also made several findings of fact

that support mitigation, expressly finding that Glasser's stress, chemical dependency, self-reporting, absence of a prior disciplinary history, and misconduct being unrelated to the practice of law are mitigating factors. Although alcoholism did not cause Glasser's misconduct, the referee found, it "contribute[d] to [the] misconduct, in that it ... contribut[ed] to her financial instability and erratic employment history." The referee recommended a public reprimand and supervised probation for a period of five years.

## I.

The Director argues that the referee erred by finding that Glasser is entitled to mitigation because she reported her misconduct and has no prior discipline. The Director also asserts that the referee erred when he failed to make a finding regarding Glasser's remorse for her misconduct. Because we were provided a transcript of the proceedings, the referee's findings of fact and conclusions of law are not binding. *In re Peterson,* 718 N.W.2d 849, 853 (Minn.2006). We, nonetheless, give "great deference to a referee's findings and will not reverse" them unless they are clearly erroneous. *In re Aitken,* 787 N.W.2d 152, 158 (Minn.2010). A referee's findings are clearly erroneous when they leave us "with the definite and firm conviction that a mistake has been made." *In re Albrecht,* 779 N.W.2d 530, 535 (Minn. 2010) (citation omitted) (internal quotation marks omitted).

After a careful review of the record, we conclude that the referee erred by (1) finding that Glasser self-reported her misconduct; (2) concluding that Glasser was entitled to mitigation because she had not been disciplined in the past; and (3) failing to make findings regarding Glasser's remorse for her misconduct. Contrary to the referee's finding that Glasser self-re-

ported the misconduct, Glasser admitted at the hearing before the referee that the Director "first became aware [of the conviction when] the prosecutor in Hennepin County sent [the Director] a letter detailing the charges." Thus, although self-reporting is a mitigating factor, self-reporting did not occur in this case. *See, e.g., In re Arbeiter,* 764 N.W.2d 814, 814 (Minn. 2009). In addition, because "an attorney's lack of disciplinary history is not a mitigating factor but is instead the absence of an aggravating factor," *Aitken,* 787 N.W.2d at 162, the referee's conclusion that Glasser's lack of prior discipline is a mitigating factor also is erroneous.

■ Whether Glasser is remorseful for her misconduct is an important consideration in an attorney discipline case, and the referee erred by not addressing it. *Albrecht,* 779 N.W.2d at 538. And there is insufficient evidence in the record regarding remorse for us to make an independent determination. *See, e.g., In re Fairbairn,* 802 N.W.2d 734, 745–46 (Minn.2011) (finding an attorney was remorseful and entitled to mitigation because the attorney testified that her actions were "just not right" and "horrible"). As in *Albrecht,* we therefore decline the Director's suggestion to consider Glasser's alleged lack of remorse as an aggravating factor, because there is not sufficient evidence regarding this factor to change the assessment of appropriate discipline. *See* 779 N.W.2d at 542.

## II.

We next consider the appropriate discipline in this case. The referee recommends a public reprimand and supervised probation for a period of five years. The Director counters that this discipline is too lenient and recommends an 18–month suspension. We decline both options.

■ The purpose of disciplinary sanctions "is not to punish the attorney, but rather 'to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.'" *In re Vaught,* 693 N.W.2d 886, 890 (Minn.2005) (quoting *In re Oberhauser,* 679 N.W.2d 153, 159 (Minn. 2004)). While "we place great weight on the referee's recommended discipline, we retain ultimate responsibility for determining the appropriate sanction." *In re Rebeau,* 787 N.W.2d 168, 173 (Minn.2010). The four factors we consider to determine appropriate discipline are the nature of the misconduct, the cumulative weight of the violations, the harm to the public, and the harm to the legal profession. *In re Lundeen,* 811 N.W.2d 602, 608 (Minn.2012). We also consider any aggravating or mitigating circumstances. *In re Mayrand,* 723 N.W.2d 261, 268 (Minn.2006). We impose discipline on a case-by-case basis, but similar cases provide guidance as to appropriate discipline. *Lundeen,* 811 N.W.2d at 608.

We first consider the nature of Glasser's misconduct. "It is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Minn. R. Prof. Conduct 8.4(b). Glasser's misconduct reflected negatively on her honesty and trustworthiness because theft by swindle, Minn.Stat. § 609.52, subds. 2(4), 3(5) (2012), is a crime that directly involves dishonesty or a false statement. *State v. Sims,* 526 N.W.2d 201, 202 (Minn.1994).

A conviction of a crime of dishonesty is a serious violation of Minn. R. Prof. Conduct 8.4(b). At a minimum, we have imposed public discipline when an attorney commits a misdemeanor crime involving dishones-

ty.[1] *See, e.g., In re Morris,* 796 N.W.2d 152, 152–53 (Minn.2011) (suspending an attorney for a minimum of six months after he was convicted of a misdemeanor for manipulating a loan closing agreement); *In re Ingebritson,* 741 N.W.2d 397, 397 (Minn.2007) (imposing public reprimand and unsupervised probation for misdemeanor conspiring to commit an offense against the United States); *In re Dvorak,* 554 N.W.2d 399, 401, 404–05 (Minn.1996) (imposing public reprimand for a misdemeanor conviction for willfully filing fraudulent or false tax returns); *In re Prescott,* 271 N.W.2d 822, 823–24 (Minn.1978) (imposing stayed three-year suspension for attorney convicted of a misdemeanor for providing false information in an application to obtain federal insured loan fraudulently), *vacated,* 336 N.W.2d 254 (Minn. 1983). Yet, while Glasser's misconduct was serious, we typically impose no more than a suspension or a public reprimand for criminal conduct unrelated to the practice of law. *In re Farley,* 771 N.W.2d 857, 864 (Minn.2009). Glasser did not commit theft by swindle against a client, and there is no evidence that Glasser used the proceeds of her crime for her law practice or that the wrongful conduct related in any way to the practice of law.

In addition to the nature of the misconduct, we look to the cumulative weight of the violations when determining the appropriate sanction. *Lundeen,* 811 N.W.2d at 608. Glasser's misconduct consists of two misdemeanor convictions of a crime involving dishonesty. But Glasser pleaded guilty to making multiple charges on a credit card over the course of several months. Thus, while Glasser's misconduct violated only one rule, the misconduct was neither a single, isolated incident nor a brief lapse in judgment. *Compare In re Grigsby,* 815 N.W.2d 836, 845 (Minn.2012) (concluding a single instance of misconduct did not warrant enhanced discipline), *with In re Wentzel,* 711 N.W.2d 516, 521 (Minn. 2006) (concluding 30 instances of misappropriation warranted enhanced discipline), *and In re Rooney,* 709 N.W.2d 263, 269 (Minn.2006) (concluding that 17 instances of misappropriation warranted enhanced discipline).

█ When determining appropriate discipline, we also consider the harm to the public and the legal profession. *Lundeen,* 811 N.W.2d at 608. Misconduct involving dishonesty is particularly serious because honesty and integrity are among the most important attributes the public has the right to expect of lawyers. *Grigsby,* 815 N.W.2d at 845. Because Glasser's criminal offenses directly involve dishonesty, her misconduct harmed both the public and the profession by undermining the public's confidence in the honesty and integrity of lawyers. *Id.* at 845–46; *see also In re Montez,* 812 N.W.2d 58, 70 (Minn. 2012).

---

1. The Director argues that this case is similar to *In re Mayne,* 783 N.W.2d 153 (Minn.2010). In *Mayne,* we disbarred an attorney after she was convicted of the felony offense of financial exploitation of a vulnerable adult for taking approximately $60,000 from her father's bank account and failing to pay approximately $45,000 of his care bills. *Id.* at 156. *Mayne,* however, is distinguishable because Mayne was convicted of a felony. *Id.* at 156, 163. Moreover, the context in which Mayne's criminal conduct occurred is different because Mayne was acting as an attorney-in-fact for a vulnerable person. *Id.* at 163. At oral argument, the Director also relied on *In re Crosby,* 577 N.W.2d 711 (Minn.1998), in which we suspended Crosby for five years after he was convicted of theft by swindle. *Id.* at 711. The Director acknowledged that Crosby was convicted of a felony and mitigating factors were not present in that case, which came to the court on a stipulation for discipline. *Id.* at 711. For these reasons, *Crosby* also is distinguishable from the circumstances here.

Finally, we assess mitigating and aggravating circumstances to determine the appropriate sanction. *Lundeen,* 811 N.W.2d at 608. Two mitigating factors are present here—lack of harm to clients because of the misconduct, and extreme stress in Glasser's personal life when she committed the misconduct.

"[L]ack of harm to clients" may be considered a mitigating factor and generally warrants a lesser sanction when Rule 8.4(b) is violated. *See Farley,* 771 N.W.2d at 863–64. Glasser pleaded guilty to misdemeanor theft by swindle for failing to inform a credit card company of her father's death and thereafter using his credit card, which her father had permitted her to use when he was living. Glasser neither had an attorney-client relationship with the credit card company, nor used the credit card in her law practice. Glasser, therefore, is entitled to mitigation because her misconduct did not harm her clients.

Glasser also is entitled to mitigation because she was experiencing extreme stress in her personal life when she committed the misconduct. *Rooney,* 709 N.W.2d at 272. "Turmoil in an attorney's personal life ... [can be] considered a mitigating factor even without proof ... that the turmoil caused the misconduct." *Id.* When Glasser committed theft by swindle, at least five circumstances contributed to her extreme stress. Her son was suffering from undiagnosed autism. She was raising her son alone because her former husband had been convicted of criminal sexual conduct and banned from contact with their son. Glasser's former husband was not paying child support. Glasser's chronically ill father who supported her financially passed away. In addition, Glasser had serious financial problems.

It also is undisputed that when she committed the misconduct, Glasser was a severe alcoholic. The referee found that Glasser's consumption of alcohol did not cause her misconduct, but it contributed to her misconduct because it was directly related to her financial instability and her erratic employment history. The Director asserts that the referee erred when he considered Glasser's alcoholism as a component of her extreme stress.

To establish alcoholism as a mitigating factor to intentional misconduct, the attorney must prove five factors, including a causal relationship between the alcoholism and the misconduct. *In re Anderley,* 481 N.W.2d 366, 370 (Minn.1992) (citing *In re Johnson,* 322 N.W.2d 616, 618 (Minn. 1982)). These five factors, first adopted in the context of psychological disability, are commonly referred to as the *Weyhrich* factors. *See In re Fairbairn,* 802 N.W.2d 734, 744 (Minn.2011); *see also In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983). Because the referee found, and Glasser does not dispute, that alcoholism did not cause Glasser's misconduct, Glasser has not satisfied the *Weyhrich* factors.

In *Fairbairn,* however, we concluded that the attorney was entitled to mitigation because she was under extreme personal stress when she committed misconduct. 802 N.W.2d at 745. Like Glasser, the attorney in *Fairbairn* did not establish that her depression was an independent mitigating factor because she did not establish that her depression "caused" her misconduct. *Id.* at 744. But we considered several aspects of Fairbairn's life, many of which were unrelated to her depression, when evaluating "extreme stress." *Id.* at 745. These aspects included loss of a sibling to suicide, providing care to a recovering daughter and infant granddaughter, and taking powerful prescription medication. *Id.* We also considered Fairbairn's depression. *Id.* In doing so, we considered Fairbairn's mental disease as one of many factors that caused

stress in her life even though Fairbairn did not establish that her depression met the causation requirement of *Weyhrich. Id.* at 744.

The extreme stress in Glasser's life was at least comparable to that in *Fairbairn.* Moreover, many of the stress-causing events in Glasser's life were independent of her alcoholism. Glasser, however, presented evidence that her alcoholism contributed to her financial instability and otherwise caused stress. We conclude, consistent with our analysis and consideration of depression in *Fairbairn,* 802 N.W.2d at 744–45, that it is proper to consider Glasser's alcoholism and the manner in which it independently caused stress when other stress-causing events were simultaneously occurring in Glasser's life. Under the totality of the circumstances, Glasser is entitled to mitigation because she was experiencing extreme personal stress when she committed professional misconduct.

In light of the substantial mitigating factors presented here, the Director's recommendation of an 18–month suspension is too severe. Yet we also decline to accept the referee's recommendation in light of the erroneous factual findings regarding mitigation. The referee's recommendation does not fully account for the severity of Glasser's misconduct. In our judgment, the appropriate sanction for Glasser's misconduct is suspension for a minimum of 30 days, followed by a five-year period of supervised probation if respondent is reinstated as provided herein. Accordingly, we hereby order that:

1. Respondent Susanne Marie Glasser is suspended from the practice of law in the State of Minnesota for a minimum of 30 days, effective 14 days from the date of the filing of this opinion;

2. Upon reinstatement, Glasser shall be placed on probation for five years, subject to the following terms and conditions:

(a) Glasser shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation. Glasser shall respond to the Director's correspondence by the due date. Glasser shall provide the Director with a current mailing address and shall immediately notify the Director of any change of address. Glasser shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, Glasser shall authorize the release of information and documentation to verify compliance with the terms of this probation;

(b) Glasser shall abide by the Minnesota Rules of Professional Conduct;

(c) Glasser shall maintain total abstinence from alcohol and other mood-altering chemicals, except that Glasser may use prescription drugs in accordance with the directions of a prescribing physician who is fully advised of Glasser's chemical dependency before issuing the prescription;

(d) Glasser shall attend at least three weekly meetings of Alcoholics Anonymous or another support program acceptable to the Director. Glasser shall, by the tenth day of each month, without a specific reminder request, submit to the Director an attendance verification on a form provided by the Director, which provides the name, address and telephone number of the person verifying the attendance. Such attendance verification shall also, upon request, be provided to Glasser's supervisor, if any;

(e) Glasser shall, at her own expense, no more than four times per month, submit to random urinalysis for drug screening at a facility approved by the Director and shall direct the drug screening facil-

ity to provide the results of all urinalysis testing to the Director's Office. If, after one year, all such tests have been negative, then the frequency of the random tests may be reduced. Glasser shall cooperate with the phone-in program established by the Director for the random test. Any failure to phone in as required by the random test program shall be considered the same as receipt of a positive test result. Any positive test result will be grounds for revoking this probation;

(f) Glasser shall be supervised by a licensed Minnesota attorney appointed by the Director to monitor compliance with the terms of this probation. Glasser shall provide to the Director, within two weeks from the date of the court's order, the names of four attorneys who have agreed to be nominated as her supervisor. If, after diligent effort, Glasser is unable to locate a supervisor acceptable to the Director, the Director will seek to appoint a supervisor; and

(g) Glasser shall cooperate fully with the supervisor in his or her efforts to monitor compliance with Glasser's probation. Glasser shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter. Glasser shall fully disclose to the supervisor in writing whether she has remained abstinent from alcohol and other mind-altering drugs. Glasser's supervisor shall file written reports with the Director at least quarterly, or at such more frequent intervals as may reasonably be requested by the Director.

3. Glasser shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals);

4. Glasser shall pay $900 in costs pursuant to Rule 24, RLPR;

5. By June 1, 2014, Glasser shall file with the Clerk of Appellate Courts and serve upon the Director proof of successful completion of the professional responsibility portion of the state bar examination. Failure to timely file the required documentation shall result in automatic re-suspension, as provided in Rule 18(e)(3), RLPR; and

6. Glasser shall be eligible for reinstatement to the practice of law following the expiration of the suspension period provided that, not less than 15 days before the end of the suspension period, Glasser files with the Clerk of Appellate Courts and serves upon the Director an affidavit establishing that she is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has complied with any other conditions for reinstatement imposed by the court.

So ordered.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.