IN RE Petition for DISCIPLINARY ACTION AGAINST John F. BONNER, III, a Minnesota Attorney, Registration No. 0009726

A15-1813

Supreme Court of Minnesota.

Filed: May 31, 2017

Susan M. Humiston, Director, Cassie Hanson, Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Jon M. Hopeman, Lauren M. Krueger, Felhaber Larson, Minneapolis, Minnesota, for respondent attorney.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action against John F. Bonner, III, alleging that while

acting as principal owner of a law firm, Bonner failed to remit withheld employee contributions into employees' retirement accounts and instead used the funds to pay both his law firm's and his own expenses. Count I of the petition involved conduct for which Bonner was convicted of felony theft by swindle. Count II involved similar conduct to Count I but was not covered by the time frame underlying the conviction. We appointed a referee, who found that, although Bonner's conduct in Count I violated Minn. R. Prof. Conduct 8.4(b) and 8.4(c), with respect to Count II, the Director had failed to prove by clear and convincing evidence that Bonner violated Minn. R. Prof. Conduct 8.4(c). The referee also found one aggravating factor and several mitigating factors. The referee recommended a 90-day suspension.

The Director challenges the referee's findings, and both parties challenge the referee's recommended discipline. We hold that the referee did not clearly err by concluding that the Director failed to prove the allegations in Count II of the petition. We further hold that the referee clearly erred in his findings on several mitigating factors. We conclude that, given the mitigating factors present, the appropriate discipline for respondent's conviction of felony theft by swindle is an indefinite suspension with no right to petition for reinstatement for 9 months.

## FACTS

Bonner was admitted to practice law in Minnesota on October 5, 1973. In 1998, Bonner founded the law firm of Bonner & Borhart, LLP (firm). From the firm's inception, Bonner held more than a majority ownership interest. Between 2009 and 2014, the period of time at issue in this case, five attorneys worked at the firm, along with other support staff. As the principal owner and managing partner, Bonner was responsible for paying the firm's bills and expenses.

In 2000, the firm established a SIMPLE IRA Plan (Plan) to provide retirement benefits to employees. Bonner was the fiduciary of the Plan and was responsible for depositing the withheld employee retirement contributions into the Plan.

The Plan worked in the following manner. The firm hired one outside vendor that processed payroll and managed the employee-contribution paperwork. With this paperwork, an employee designated how much to contribute to an individual retirement account (IRA). Each pay period, the amount elected was deducted from the employee's pay check. Each month, a second outside vendor prepared and sent checks to Bonner for the amount the employee had designated. After Bonner signed the checks, they were sent to the company that managed the Plan, which deposited the funds into the appropriate employee's IRA. Between 2000 and 2008, Bonner remitted withheld employee contributions on time and in full.[1]

As a result of the 2007-08 recession, the firm began experiencing financial problems in 2009. Bonner began prioritizing expenses because the firm lacked sufficient funds to pay all of its operating expenses on a monthly basis. Bonner put staff salaries at the top of the priority list, followed by medical insurance, attorney salaries, rent, and finally other vendors and IRA payments.

---

1. Bonner also participated in the Plan as an employee, but he stopped contributing to his IRA in 2009, around the same time that he ceased his routine remittance of employee contributions. Bonner testified that he did so because he believed that making payments into his IRA would increase the amount the firm owed and that it was not fair to make payments into his own IRA if he was not doing the same for his employees.

Although Bonner stopped depositing the withheld employee contributions into the Plan on a regular basis in 2009, he made sporadic payments to the Plan in March, April, May, and July 2010. Bonner caught up on all missing payments in November 2010. Although he was late on payments thereafter, he made payments in 2012, 2013, and 2014.[2] Between January 15, 2009, and May 12, 2014, Bonner failed to *timely* deposit $133,127.53 in withheld employee contributions into their IRA accounts and *never* deposited $23,334.63 in withheld employee contributions into those accounts.

Bonner testified that he was unaware that the employee contributions to the IRA plan were made with funds withheld from employee salaries; rather, he believed that the firm was making these contributions with firm profits. Bonner agreed that the form for setting up the Plan explained the use of employee contributions, but he testified that he likely did not read it. Bonner contends that it was not until the United States Department of Labor (DOL) began an investigation in September 2012 that he learned that the employee contributions were made with funds withheld from employee salaries.

Bonner also testified that employees knew about the firm's financial condition and that their retirement contributions were not being deposited into their IRAs, even though the contributions continued to be deducted from their paychecks. Bonner and one of the firm's attorneys testified that the firm kept open books for attorneys to review. The attorney also said that he knew that his employee contributions were not being deposited into his IRA account, despite the ongoing deduction from his monthly salary. In fact, the attorney had conversations with all of the attorneys at the firm about the firm's failure to make deposits into their IRA accounts. In addition, one partner and one member of the support staff stopped contributing to their IRAs because they knew their payments were not being deposited.

In August 2009, the firm took out a revolving line of credit at Landmark Bank that Bonner personally guaranteed. In December 2012, the firm[3] took out another loan, also personally guaranteed by Bonner, to pay off the Landmark credit line. Between 2009 and 2014, Bonner paid the staff salaries in full and on time despite other firm bills going unpaid. During this period, Bonner did not take a salary, but he did take draws from the firm to cover his cost-of-living and court-ordered expenses.[4] Bonner also contributed personal funds to the firm totaling $295,000.[5]

In summer 2011, Bonner and three attorneys of the firm met to discuss eliminating the Plan in light of the firm's finances,

---

**2.** The record is not clear regarding the exact months that Bonner made late IRA payments. The parties agree, however, that although late at times, between January 2009 and May 2014, Bonner paid over $200,000 in withheld employee contributions into the Plan.

**3.** By that time, the firm Bonner & Leach, LLP had succeeded Bonner & Borhart, LLP, but all accounts remained the same.

**4.** For example, in 2011, Bonner drew $139,000 from the firm for his own personal expenses. His gross receipts for the year were $238,158.11.

**5.** In 2011, Bonner deposited $170,000 into the firm's account to pay down the Landmark credit line after cashing out his personal IRA account. Bonner incurred a $60,000 tax penalty for cashing out his personal IRA. Bonner also deposited additional personal funds into the firm's operating account in 2010, 2011, and 2014. Specifically, in June 2010, Bonner deposited $50,000 into the firm's account; in February 2011, Bonner deposited $10,000 into the firm's account to cover a medical insurance payment; and in May 2014, Bonner deposited $65,000 into the firm's account.

but Bonner was adamant that the Plan continue unchanged because employees and attorneys depended on this benefit. Bonner testified that he believed the firm would catch up on the missed payments.

On July 31, 2014, Bonner was charged in Hennepin County District Court with felony theft by swindle, Minn. Stat. § 609.52, subd. 2(a)(4) (2016), for his failure to deposit $6,068.08 in withheld employee contributions into the IRA accounts of two firm attorneys from August 23, 2011, to January 31, 2012. The evidence at trial proved that Bonner kept withheld employee contributions in the firm's business account, which was used to pay the firm's business expenses and some of Bonner's personal expenses.

Two attorneys also testified at trial. The first testified that he was aware that his employee contributions were not being deposited and that Bonner failed to make a catch-up payment in 2011, despite promising to do so. The other attorney provided inconsistent testimony regarding her knowledge about whether the employee contributions were being deposited into her IRA account.[6]

Bonner was convicted of felony theft by swindle on January 2, 2015. As part of his sentence, Bonner was required to make full restitution and pay a fine of $6,000. Bonner was also placed on probation for 3 years, which was originally set to end in March 2018. The district court discharged him from probation early, effective January 27, 2017.[7]

On January 8, 2015, the DOL filed a civil complaint against Bonner, alleging that from January 15, 2009, through May 12, 2014, Bonner failed to *timely* deposit $133,127.53 in withheld employee contributions into the Plan and *never* deposited $23,334.63 (which included the $6,068.08 that was the subject of the criminal case).[8] Bonner made all required payments to the appropriate IRA accounts by April 15, 2016, and paid an additional $9,658.98 to those employees' accounts to compensate for lost opportunity costs. Bonner and the DOL entered into a consent order and judgment dismissing the case on May 5, 2016.

On January 14, 2015, the Director began investigating Bonner as a result of his felony conviction and the DOL lawsuit. The November 6, 2015 petition for disciplinary action alleged that Bonner's conduct that resulted in his felony conviction violated Minn. R. Prof. Conduct 8.4(b) (prohibiting criminal acts that reflect adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation) (Count I), and that Bonner's failure to deposit

---

6. This attorney agreed that she knew there were issues with money being sent to individual IRAs and that was why she reduced her contribution in 2010, from the maximum amount allowed by law to 3 percent. She also testified that in 2010, she had a discussion with an assistant regarding employee contributions not being deposited into the Plan. Despite this testimony, this attorney also testified that she believed her withheld funds were being deposited into her retirement account.

7. When Bonner was discharged from probation, his felony conviction automatically converted to a misdemeanor conviction by operation of law. *See* Minn. Stat. § 609.13, subd. 1 (2016).

8. The record does not establish what, if any, payments Bonner failed to make after he discovered in September 2012 that contrary to his earlier belief, the IRA contributions were made with withheld funds from employee salaries, not firm profits. Presumably, there were late or missing payments from September 2012 to May 12, 2014, which represents a portion of the period covered by the DOL complaint, but the record does not establish this fact.

withheld employee contributions between January 15, 2009, to May 12, 2014, violated Minn. R. Prof. Conduct 8.4(c) (Count II).

In response, Bonner admitted that he failed to deposit withheld employee contributions into the Plan. Bonner stated that during the relevant time, there often was a shortage of funds in the firm's business account to pay the firm's overhead expenses and that it was during those times that withheld employee contributions were not deposited or were deposited in an untimely fashion. Bonner also asserted several mitigating factors.

At the hearing before the referee, two attorneys testified to Bonner's good character and reputation. An attorney formerly employed by the firm, one of the victims of the conduct underlying Bonner's criminal conviction, also testified to Bonner's trustworthiness and competency and said that Bonner never lied to him or told him that the IRA payments were being deposited when they were not.

Following the hearing, the referee issued findings of fact, conclusions of law, and a recommendation for discipline. With respect to Count I, the referee found that Bonner's conviction for felony theft by swindle violated Minn. R. Prof. Conduct 8.4(b) and 8.4(c) but that with respect to Count II the Director failed to prove by clear and convincing evidence that Bonner violated Minn. R. Prof. Conduct 8.4(c).[9] The referee recommended that Count II be dismissed and that Bonner receive a 90-day suspension for the misconduct proven in Count I.

## ANALYSIS

■ When we are provided a transcript of attorney discipline proceedings, "the referee's findings of fact and conclusions of law are not binding." *In re Glasser*, 831 N.W.2d 644, 646 (Minn. 2013); *see also* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR) ("If either the respondent or the Director so orders a transcript, then none of the findings of fact or conclusions shall be conclusive, and either party may challenge any findings of fact or conclusions."). But we give great deference to a referee's findings and will not reverse the referee when the findings have evidentiary support in the record and are not clearly erroneous. *In re Aitken*, 787 N.W.2d 152, 158 (Minn. 2010). "A referee's findings are clearly erroneous when they leave us 'with the definite and firm conviction that a mistake has been made.'" *Glasser*, 831 N.W.2d at 646 (quoting *In re Albrecht*, 779 N.W.2d 530, 535 (Minn. 2010)).

### I.

■ The Director contends that the referee clearly erred by concluding that she failed to prove that Bonner violated Minn. R. Prof. Conduct 8.4(c) as alleged in Count II of the petition. Rule 8.4(c) provides: "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* The Director bears the burden of proving by clear and convincing evidence that an attorney has violated the Minnesota Rules of Professional Conduct. *In re Varriano*, 755 N.W.2d 282, 288 (Minn. 2008). This standard "requires a high probability that the facts are true." *In re Lyons*, 780 N.W.2d 629, 635 (Minn. 2010). The Director must, in other words, prove the allegations by "'cogent and compelling evidence.'" *In re Strid*, 551 N.W.2d 212, 215 (Minn. 1996) (quoting *In re*

---

**9.** With respect to Count II, the referee also found that the Director failed to prove that Bonner violated Minn. R. Prof. Conduct 8.4(b). The petition, however, did not allege a violation of Minn. R. Prof. Conduct 8.4(b) in Count II.

*Schmidt*, 402 N.W.2d 544, 545 (Minn. 1987)).

■ Rule 19, RLPR, provides that a "lawyer's criminal conviction . . . is, in proceedings under these Rules, conclusive evidence that the lawyer committed the conduct for which the lawyer was *convicted*." (Emphasis added.) Accordingly, Bonner's felony theft by swindle conviction is conclusive evidence that he committed the conduct alleged in Count I. But it is insufficient to show that Bonner committed the conduct alleged in Count II, which fell outside the timeframe covered by the criminal conviction. Therefore, to meet her burden, the Director was required to present additional evidence to prove the allegations in Count II.

■ At the hearing, the Director focused on the element of "dishonesty" in Minn. R. Prof. Conduct 8.4(c) and elicited testimony from Bonner confirming what was contained in a joint stipulation of facts.[10] Bonner also testified that he did not understand that the employee retirement contributions were withheld from employee salaries; that he failed to timely deposit some withheld contributions into the employees' IRA accounts and never deposited other contributions altogether; and that employees knew that contributions to their IRAs were not being deposited when the firm was struggling financially. The Director cites no evidence in the record, other than the existence of the DOL complaint,[11] demonstrating that, once Bonner learned in 2012 that the funds were withheld from employee salaries, he continued his behavior of failing to deposit the withheld funds into the employees' IRA accounts.

There is no dispute that Bonner acted wrongfully by not depositing withheld employee contributions into the Plan, and Bonner does not contend otherwise. What the parties dispute is whether the Director proved the claim alleged in Count II of the petition—that Bonner acted dishonestly. There was evidence before the referee that could support either outcome, but a question of dishonesty is often the quintessential credibility call. Bonner did not act furtively, actively concealing what he was doing from his employees. Instead, the evidence presented at the hearing established that with respect to Count II, employees knew their contributions were not being deposited into their IRAs. Bonner also made substantial cash infusions, at some personal cost, into the firm's operating account before he claimed to have understood the wrongful nature of his conduct. Although Bonner indisputably failed to deposit employee contributions into the Plan, he attempted to catch up on the payments he had missed and made significant restitution by making late payments into the Plan before the Director and the DOL began their respective investigations.

10. The joint stipulation of facts included the following: the total monetary amount of withheld employee contributions that Bonner failed to timely deposit and never deposited into employees' IRA accounts between January 15, 2009, and May 12, 2014; the dates on which Bonner repaid some of the employee contributions that he had failed to timely deposit; and a timeline for the DOL civil lawsuit.

11. The DOL complaint sets out a date range (January 15, 2009 through May 12, 2014) during which Bonner failed to deposit or timely deposit withheld employee contributions into the Plan. It does not, however, set out the precise months (i.e., every month in that date range, or only sporadically) that Bonner committed this misconduct. The DOL complaint also does not detail the amount of undeposited funds during each month. Without this information, we cannot determine when, or if, Bonner committed any misconduct after learning that the employee contributions were withheld from employee salaries.

On the other hand, there is no dispute that restitution was not complete until well after 2012 and was made only after Bonner was convicted of a crime and separately sued by the DOL. We also recognize the problem posed by Bonner's reliance on an argument that he was ignorant of the law, which is best described as a less than overwhelming defense.

But, in the end, the Director has the burden of proving dishonesty by clear and convincing evidence. We conclude that the referee's finding here was based on a credibility determination that Bonner did not act dishonestly with respect to the conduct alleged in Count II. *See Varriano*, 755 N.W.2d at 290 (concluding that the referee's finding, which was based on a credibility determination that the lawyer did not act dishonestly, was not clearly erroneous). Because the Director did not prove an essential requirement for a Rule 8.4(c) violation, the Director did not prove the allegations in Count II of the petition by clear and convincing evidence. Therefore, we hold that the referee did not clearly err by concluding that the Director failed to prove the allegations in Count II of the petition.

## II.

■ We next determine the appropriate discipline for Bonner's misconduct. The parties disagree about the appropriate discipline. The Director asks that we impose an indefinite suspension with no right to petition for reinstatement for 2 years. In contrast, Bonner argues that a 30-day suspension is appropriate, due to the nature of the misconduct and the existence of mitigating factors.

■ "The purpose of discipline for professional misconduct is 'not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.'" *In re Brost*, 850 N.W.2d 699, 703 (Minn. 2014) (quoting *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010)). In determining the appropriate discipline, we consider four factors: "1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession." *In re Singer*, 541 N.W.2d 313, 316 (Minn. 1996). We also consider any aggravating and mitigating circumstances. *In re Vaught*, 693 N.W.2d 886, 890 (Minn. 2005). Finally, although we determine the appropriate discipline on a case-by-case basis, we consider "similar cases in an effort to impose consistent discipline." *Albrecht*, 779 N.W.2d at 540.

### A.

Regarding the nature of the misconduct, Bonner misappropriated $6,068 in personal contributions made by two firm employees to their IRA accounts. As a result of this conduct, Bonner was convicted of felony theft by swindle. His conduct violated Rule 8.4(b) and 8.4(c) and constitutes serious misconduct.[12] *See Glasser*, 831 N.W.2d at 647 (stating that misconduct involving theft by swindle "reflected negatively on [the lawyer's] honesty and trustworthiness because [it] ... is a crime that directly involves dishonesty or a false statement").

■ "An attorney's felony conviction for theft, fraud, or embezzlement has long been treated as serious professional misconduct that often warrants disbar-

---

**12.** Although Bonner's conviction eventually was deemed a misdemeanor by operation of law, effective January 27, 2017, a jury found him guilty beyond a reasonable doubt of felony theft by swindle. We therefore determine the appropriate discipline in light of the fact that Bonner was originally convicted of a felony.

ment...." *Brost*, 850 N.W.2d at 703. We do not, however, automatically disbar attorneys convicted of felonies. *See In re Koss*, 572 N.W.2d 276, 278 (Minn. 1997). Instead, we "consider the circumstances surrounding the criminal act to determine if some discipline, short of disbarment, is appropriate." *Id.*; *see also In re Lahlum*, 719 N.W.2d 707, 707-08 (Minn. 2006) (order) (imposing an 18-month suspension on an attorney who pleaded guilty to felony theft); *In re Crosby*, 577 N.W.2d 711, 711 (Minn. 1998) (order) (imposing a 5-year suspension on an attorney who was convicted of felony theft by swindle); *In re Olkon*, 324 N.W.2d 192, 196 (Minn. 1982) (imposing a period of suspension equivalent to the length of an attorney's criminal probation based on convictions of two counts of attempted theft by swindle).

### B.

We next address the cumulative weight of Bonner's misconduct. "In assessing the cumulative weight of the violations, we distinguish a 'brief lapse in judgment' or 'a single, isolated incident' of misappropriation from multiple instances of misappropriation occurring over a substantial amount of time or involving significant amounts of money." *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011) (quoting *In re Wentzel*, 711 N.W.2d 516, 521 (Minn. 2006)) (concluding that six separate acts of misappropriation from a client trust account, which totaled $144,000 over 13 months, was "more than a brief lapse in judgment or a single isolated incident").

Here, Bonner's misappropriation was not a "single isolated incident" or a "brief lapse in judgment." Rather, Bonner failed to deposit withheld employee contributions to an IRA account in an amount totaling $6,068 over the course of 5 months. The cumulative weight of this repeated misconduct was therefore significant.

### C.

Next, we determine whether Bonner's misconduct harmed the public or the legal profession. In evaluating these factors, we consider, among other issues, how many clients were harmed and the extent of the clients' injuries. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011). Bonner's misappropriation did not harm any clients because no client funds were taken. *See Fairbairn*, 802 N.W.2d at 744 ("The lack of harm to clients ... is a factor that informs our determination of the appropriate sanction."). Bonner, however, harmed the two employees whose contributions he misappropriated.

"Misconduct involving dishonesty is particularly serious because honesty and integrity are among the most important attributes the public has the right to expect of lawyers." *Glasser*, 831 N.W.2d at 648. We have also held that "[m]isappropriation of *any kind*, by its very nature, harms the public at large." *Fairbairn*, 802 N.W.2d at 743 (emphasis added). Therefore, we conclude that Bonner's felony conviction for theft by swindle, which is a crime involving dishonesty, harmed both the public and the legal profession by undermining public confidence in the honesty and integrity of lawyers. *See In re Rooney*, 709 N.W.2d 263, 270 (Minn. 2006) ("Misappropriation of funds entrusted to an attorney as a fiduciary for his clients is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers.").

### D.

We next determine whether aggravating or mitigating factors are present. The referee found that Bonner's disciplinary his-

tory aggravates his misconduct.[13] *See In re Fett*, 790 N.W.2d 840, 849 (Minn. 2010) ("We have held on a number of occasions that an attorney's disciplinary history may be an aggravating factor."). Neither party challenges this finding.

The referee also identified multiple mitigating factors in this case. There are two uncontested mitigating factors: remorse, *see In re Severson*, 860 N.W.2d 658, 670 (Minn. 2015) ("An attorney's remorse can be a mitigating factor in considering the appropriate discipline."), and Bonner's reputation for honesty and being a good lawyer,[14] *see Albrecht*, 779 N.W.2d at 537 ("We have also treated an attorney's reputation in the legal community for integrity and hard work as a mitigating factor." (citation omitted) (internal quotation marks omitted)).

■ However, this case also involves several contested mitigating factors, the first of which is the referee's finding of "full restitution." The Director contends that Bonner's restitution was compelled and that therefore the referee clearly erred by crediting Bonner with "full restitution" as a mitigating factor. We agree with the Director.

We have repeatedly held that restitution "must not be prompted by fear of getting caught." *In re Jones*, 834 N.W.2d 671, 679 (Minn. 2013); *see also Fairbairn*, 802 N.W.2d at 746 (determining that full restitution was a mitigating factor when it occurred before an attorney was notified of an investigation by the Director). Bonner did not repay the $6,068 that he misappro-

priated from the two employees until after he was convicted of theft by swindle.[15] Because a court ordered Bonner to repay these amounts as part of his sentence, restitution is not a mitigating factor and the referee's conclusion to the contrary was clearly erroneous.

■ The referee found that full cooperation with the Director's and the DOL's investigations were mitigating factors. But "mere compliance with the rules of professional conduct is not a mitigating factor in attorney discipline cases." *Albrecht*, 779 N.W.2d at 539; *see also In re Farley*, 771 N.W.2d 857, 862 (Minn. 2009) (concluding that cooperation with criminal and disciplinary proceedings is required by the rules and is not a factor for mitigation); *In re Grigsby*, 764 N.W.2d 54, 61 (Minn. 2009) (same); *In re Moulton*, 721 N.W.2d 900, 906 (Minn. 2006) (same). Because cooperation with the Director and compliance with the law are not mitigating factors, the referee clearly erred by finding otherwise.

■ The referee also found that the lack of harm to clients and to adverse parties or tribunals constitute mitigating factors. The Director concedes that we may consider whether Bonner's misconduct "involved his representation of clients or appearing in front of tribunals . . . when determining the appropriate discipline to be imposed." But according to the Director, these factors should not be considered mitigation; instead, they relate to the nature of Bonner's misconduct and the

13. Bonner received private admonitions in 1989, 1992, 1993, and 1998. In 2001, he stipulated to private probation. None of this discipline involved misappropriation.

14. The Director "specifically dispute[d]" this finding; however, the Director then offered no further argument in opposition to it. In fact, the Director's brief acknowledges the exis-

tence of this mitigating factor. Therefore, we treat this mitigating factor as uncontested.

15. According to the joint stipulation of facts, Bonner "paid the $6,068.08 subject to the felony conviction in full. [Bonner] made one payment in the amount of $1,276.43 on April 21, 2015, and a second payment of $4,791.65 on May 13, 2015."

harm caused to the public and the legal profession.

We have held that a " '[l]ack of harm to clients' may be considered a mitigating factor and generally warrants a lesser sanction when Rule 8.4(b) is violated." *See, e.g., Glasser*, 831 N.W.2d at 649 (quoting *Farley*, 771 N.W.2d at 863); *see also Fairbairn*, 802 N.W.2d at 747 (determining that when an attorney's misappropriation of client trust funds does not cause a client to suffer "any prejudice or damage," the attorney is entitled to mitigation). More recently, however, we have held that although "multiple acts or a pattern of misconduct may properly influence the cumulative weight analysis," which is a factor we consider when determining appropriate discipline, "they cannot also serve as an additional aggravating factor." *In re Eskola*, 891 N.W.2d 294, 301 (Minn. 2017). The reasoning from *Eskola* applies equally here: we already consider lack of harm to clients, opposing counsel, or tribunals elsewhere in determining the appropriate discipline. *See In re Fru*, 829 N.W.2d 379, 390 n.7 (Minn. 2013) (refusing to consider the attorney's multiple acts of misconduct over an extended period of time as an aggravating factor because that factor "overlap[ped] with our consideration of the cumulative weight of [the attorney's] disciplinary violations").

When considering the harm to the public and the legal profession, we have already noted that Bonner's misconduct did not harm any clients and have discussed how his misconduct harmed the legal profession. We agree with the Director that considering a lack of harm to clients, adverse

parties, or tribunals should not be counted as a mitigating factor because these considerations overlap with our consideration of the harm that Bonner's misconduct caused to the public and the legal profession. Thus, we conclude that the referee clearly erred by considering lack of harm to clients, adverse parties, and tribunals as mitigating factors.

 The referee found as a mitigating factor that Bonner did not act with a selfish or dishonest motive. The Director asserts that the referee "disregarded uncontested factual evidence of [Bonner's] selfish motive" and that these uncontested facts present "sufficiently conflicting evidence" of Bonner's selfish motive or intent such that the referee's reliance on this mitigating factor was clearly erroneous. We agree that lack of a selfish or dishonest motive is not a mitigating factor in this case, but for a different reason.[16]

 Bonner was convicted of felony theft by swindle for misappropriating his employees' contributions to their IRA accounts. This conviction is conclusive evidence of the facts underlying his conviction. *See* Rule 19(a), RLPR ("A lawyer's criminal conviction in any American jurisdiction ... is, in proceedings under these Rules, conclusive evidence that the lawyer committed the conduct for which the lawyer was convicted."). A person commits theft by swindle by "obtain[ing] property or services from another" by "swindling, whether by artifice, trick, device, or any other means." Minn. Stat. § 609.52, subd. 2(a)(4).[17] "The essence of a swindle is the

---

16. The Director also argued that the referee clearly erred by failing to make sufficient underlying factual findings on this mitigating factor. Because we have concluded that the referee's reliance on this mitigating factor was clearly erroneous, we need not address

each of the underlying factual findings that the referee allegedly should have made.

17. "The elements of theft by swindle are: (i) the owner of the property gave up possession of the property due to the swindle; (ii) the defendant intended to obtain for himself or

defrauding of another of his property by deliberate artifice." *State v. Olkon*, 299 N.W.2d 89, 106 (Minn. 1980); *see also State v. Ruffin*, 280 Minn. 126, 158 N.W.2d 202, 205 (1968) ("[T]he statute punishes any fraudulent scheme, trick, or device whereby the wrongdoer deprives the victim of his money by deceit or betrayal of confidence."). In addition, theft by swindle requires the specific intent to defraud another. *State v. Cunningham*, 257 Minn. 31, 99 N.W.2d 908, 914 (1959). Because theft by swindle requires a specific intent to defraud another, Bonner's conviction is also conclusive evidence that he acted with such intent. *See In re Oberhauser*, 679 N.W.2d 153, 159 (Minn. 2004) ("Rule 19(a)'s presumption lends itself to the additional presumption that, as here, when the criminal conduct includes a specific state of mind, the conviction is conclusive evidence that the lawyer acted with that state of mind.").

The referee's finding that Bonner lacked a selfish or dishonest motive is inconsistent with the theft by swindle conviction underlying Count I: a person cannot simultaneously have a specific intent to defraud another and at the same time lack a selfish or dishonest motive. Accordingly, because the theft by swindle conviction is conclusive evidence with respect to the conduct underlying the conviction, the referee clearly erred by finding that Bonner did not act with a selfish or dishonest motive.

The referee found that because Bonner's misconduct was unrelated to the practice of law, it was a mitigating factor. The Director argues for a broad understanding of what the "practice of law" includes, contending that a lawyer's misappropriation of law firm funds implicates the practice of law because it involves a lawyer's management of a legal practice, a breach of the fiduciary obligations owed by the employer to employees or the partners of the firm, and is misconduct that impugns the integrity of the legal profession as a whole. We need not decide whether the misappropriation of law firm funds always relates to the practice of law, because Bonner's conduct constitutes grounds for disciplinary action against him. *See In re Thompson*, 296 Minn. 466, 209 N.W.2d 412, 413 (1973) (declining to address whether a crime directly related to the practice of law as "[i]t is well settled ... that murder by an attorney constitutes a ground for disciplinary action against him"). Bonner was convicted of felony theft by swindle; therefore, we conclude that the referee clearly erred by finding that Bonner was entitled to mitigation on this factor.

■■■ The referee found as a mitigating factor that Bonner's misconduct was related to his law firm's extreme financial difficulties. The Director argues that law firm financial distress is not an appropriate mitigating factor. We agree that the referee clearly erred by concluding that the law firm's financial difficulties were a mitigating factor.

We have "held that 'extreme stress' or 'extraordinary stress' can be a mitigating factor." *Fairbairn*, 802 N.W.2d at 745 (quoting *In re Mayne*, 783 N.W.2d 153, 161-62 (Minn. 2010); *Rooney*, 709 N.W.2d at 272). But we have also determined that "neither personal financial pressures nor financial pressures facing an attorney's firm mitigate intentional misappropriation." *Id.*; *see also Rooney*, 709 N.W.2d at 272 ("An attorney's personal financial difficulties, however, do not mitigate in misappropriation cases and can never justify the misappropriation of client funds.").

someone else possession of the property; and (iii) the defendant's act was a swindle." *State*

*v. Pratt*, 813 N.W.2d 868, 873 (Minn. 2012).

██ Under our case law, severe financial distress must be coupled with some other type of extreme stress to constitute mitigation. *See Glasser*, 831 N.W.2d at 649 (determining that the attorney was entitled to mitigation for extreme stress because at least five circumstances contributed to that stress, including financial difficulties). Here, Bonner asserted financial difficulty alone, and unlike *Glasser* and *Fairbairn*, there are no other personal stressors alleged that would, coupled with the financial distress, qualify as a mitigating factor. Therefore, we conclude that the referee clearly erred by finding that extreme financial difficulty mitigated Bonner's misappropriation of funds.

In all, we accept two of the mitigating factors found by the referee: that Bonner was remorseful for his conduct and that testimony from three character witnesses demonstrated his reputation for honesty and being a good lawyer.

### E.

To determine the appropriate discipline, we consider similar cases to produce consistency. *Albrecht*, 779 N.W.2d at 540. We begin with the positions of the parties. Both the Director and Bonner agree that a suspension is appropriate, but disagree as to the length. The referee recommends a 90-day suspension. The Director argues for a 2-year suspension, and Bonner argues for a 30- or 60-day suspension. We do not adopt any of these recommendations.

The Director argues that Bonner's misconduct could warrant disbarment absent substantial mitigating factors. The Director asserts that Bonner's remorse and his reputation as a "good and competent lawyer" are mitigating factors that "may

be sufficient to warrant a substantial period of suspension, as compared to disbarment." The Director relies on two cases in which a lawyer convicted of theft was suspended rather than disbarred.[18]

In *Olkon*, we suspended a lawyer convicted of two counts of attempted felony theft by swindle for the length of his criminal probation.[19] 324 N.W.2d at 193-95. Olkon negotiated an insurance settlement on behalf of an undercover police officer posing as an accident victim, and although Olkon did not know his client was an undercover police officer, he knew that the client's claimed injuries did not exist. *Id.* The court did not disbar Olkon because of "the strong mitigating factors and unique facts of th[e] case." *Id.* at 196.

Similarly, in *Lahlum*, a lawyer fraudulently obtained unemployment insurance benefits and was convicted of felony theft, which was reduced at sentencing to a gross misdemeanor. 719 N.W.2d at 707. We approved the jointly recommended discipline of an indefinite suspension for a minimum of 18 months. *Id.*

These cases are distinguishable from Bonner's case. In *Olkon*, we determined that the attorney's suspension should be equal to his criminal probation. Here, Bonner has already been discharged from probation. Olkon's actions also directly implicated a core function of the administration of justice by specifically misleading opposing parties about the nature of his client's claim. In contrast, Bonner's actions did not involve litigation at all, much less inducing adverse parties to rely on his fraudulent characterization of his client's condition. In *Lahlum*, the parties entered into a stipulation for discipline and jointly recom-

---

18. The Director also relies on cases in which the lawyer was disbarred. We conclude that these cases are inapplicable to Bonner's situation, and we do not address them further.

19. Our decision does not indicate the length of Olkon's criminal probation. *See* 324 N.W.2d at 193, 196.

mended an 18-month suspension. *See In re Riehm*, 883 N.W.2d 223, 233 (Minn. 2016) (determining that when the Director and the attorney enter into a stipulation for discipline, we " 'give some deference to the Director's decision to enter into [the] stipulation....' " (quoting *In re Olson*, 872 N.W.2d 862, 864 (Minn. 2015)). Here, the Director and Bonner do not agree on the appropriate discipline, and the usefulness of *Lahlum* is limited.

In contrast to the Director, Bonner argues for a 30- to 60-day suspension, contending that *Glasser* "is the case most similar to [his] misconduct." In *Glasser*, a criminal complaint alleged that Glasser made unauthorized charges on her deceased father's credit card over the course of several months. 831 N.W.2d at 645. Glasser pleaded guilty to two counts of misdemeanor theft by swindle after a trial on felony charges ended in a hung jury. *Id.* Although Glasser's criminal conduct was serious misconduct, we determined that it was unrelated to the practice of law, and noted that "we typically impose no more than a suspension or a public reprimand" for such cases. *Id.* at 648. Mitigating factors were also present. *Id.* at 649-50. In light of these mitigating factors, we determined that the appropriate discipline was a 30-day suspension. *Id.* at 650.

We reject Bonner's contention that *Glasser* is the case most similar to his own. Although Bonner's criminal probation has ended and his conviction has now been deemed a misdemeanor, a jury found Bonner guilty of felony theft by swindle. In contrast, Glasser's trial on felony charges resulted in a hung jury, and she pleaded guilty only to lesser misdemeanor charges before the case was retried; she was never convicted of a felony. *Id.* at 645. Moreover, we have already rejected the referee's finding, given these facts, that Bonner's misconduct was unrelated to the practice of law.

Bonner also argues that we should look to attorney misconduct cases that involve the failure of an attorney to withhold payroll taxes, many of which resulted in shorter suspension periods.[20] We reject Bonner's argument that these cases support a suspension of 60 days or less for his misconduct. As the Director correctly notes, Bonner fails to recognize that all of these tax cases are distinguishable because the attorneys were not convicted for their tax violations.[21] Further, Bonner's argument fails to appreciate that his criminal conduct, which was conclusively established by his conviction, involves dishonesty and an intent to defraud. We have imposed

**20.** *See Moulton*, 721 N.W.2d at 902, 907 (imposing a 90-day suspension for failing to timely file and pay $600,000 in employer withholding taxes after considering aggravating and mitigating factors and similar cases); *In re Gurstel*, 540 N.W.2d 838, 839 (Minn. 1995) (imposing a 60-day suspension for failing to timely file state and federal individual income taxes and failing to pay state employer withholding taxes when due); *Singer*, 499 N.W.2d 467, 467 (imposing a 30-day suspension for failing to file and pay federal and state employer withholding taxes and failing to timely file federal individual income taxes); *In re Tyler*, 495 N.W.2d 184, 186 (Minn. 1992) (imposing a 30-day suspension for failing to timely file federal and state individual income

taxes and failing to file federal and state employer withholding taxes); *In re Skonnord*, 422 N.W.2d 726, 726 (Minn. 1988) (order) (imposing a 60-day suspension for failing to file and pay federal employer withholding taxes and failing to file federal individual income taxes).

**21.** Bonner cites one case involving a conviction for failing to file individual income tax returns. *See In re Doom*, 463 N.W.2d 499, 500 (Minn. 1990) (order) (imposing a 60-day suspension on an attorney who pleaded guilty to three gross-misdemeanor counts of failing to file individual state income tax returns). Unlike Bonner, the lawyer in *Doom* did not misappropriate money belonging to others.

lengthy periods of suspension on lawyers convicted of felonies for filing false tax returns. *See In re Sea*, 832 N.W.2d 851, 851-52 (Minn. 2013) (order) (imposing an indefinite suspension for a minimum of 20 months on an attorney convicted of filing materially false federal income tax returns); *In re McCloud*, 826 N.W.2d 529, 529 (Minn. 2013) (order) (imposing a 2-year suspension, retroactive to the date the lawyer began serving his prison sentence, on an attorney convicted of intentional concealment of income from the taxing authority and filing a materially false federal income tax return); *In re Jones*, 763 N.W.2d 38, 38 (Minn. 2009) (order) (imposing a 3-year suspension on an attorney who was convicted of filing a false federal income tax return).

Finally, it is worth noting that Bonner does not cite any decision from our court imposing a short suspension on an attorney convicted of felony theft by swindle. We therefore reject Bonner's suggested suspension of 30 to 60 days.

██ We recognize that the usual discipline for an attorney convicted of felony theft by swindle is disbarment. *See In re Andrade*, 736 N.W.2d 603, 604, 606-07 (Minn. 2007) (disbarring a lawyer convicted of attempted felony theft by swindle after he told a longtime client that he needed more than $2,500 to bribe a government official); *In re McNabb*, 577 N.W.2d 924, 926 (Minn. 1998) (disbarring a lawyer who was convicted of two counts of felony theft by swindle after he forged a client's signature and stole $145,000 from her and also neglected a client, made misrepresentations, and failed to cooperate with the Director's investigation); *In re Ray*, 408 N.W.2d 581, 582-83 (Minn. 1987) (disbarring a lawyer convicted of theft by swindle, livestock theft, and theft by false pretenses after the lawyer had twice been disciplined in the past for trust fund mis-

handling and failure to file income taxes, conversion of client funds, neglect of client matters, and issuance of bad checks). But we have suspended attorneys convicted of felonies when substantial mitigating factors are present. *See In re Ramsay*, 799 N.W.2d 604, 604-05 (Minn. 2011) (order) (suspending an attorney for 90 days for his conviction of felony possession of cocaine during a criminal trial in which the attorney was representing a criminal defendant); *Olkon*, 324 N.W.2d at 196 (suspending an attorney convicted of two counts of attempted felony theft by swindle for a period coterminous with his criminal probation).

After carefully reviewing our prior cases, and recognizing that Bonner's circumstances do not neatly line up with the cases cited by the parties, we conclude that neither the referee nor the parties propose the appropriate discipline. *See Rooney*, 709 N.W.2d at 269 ("But none of these cases is precisely on point. As we have often noted, attorney discipline cases are decided on a case-by-case basis, making the specific factual circumstances of each case particularly important."). We determine the appropriate discipline on a case-by-case basis, guided by the principle that the purpose of attorney discipline is to protect the public and the judicial system and to deter future misconduct, not to punish the attorney. *Brost*, 850 N.W.2d at 703.

In light of the nature of the misconduct established by his felony conviction of theft by swindle, the mitigating factors present, and the overarching goal of protecting the public, we hold that the appropriate sanction for Bonner's misconduct is an indefinite suspension with no right to petition for reinstatement for 9 months.

Accordingly, we order that:

1. Respondent John F. Bonner, III is indefinitely suspended from the practice of law, effective 14 days from the date of this opinion, with no right to petition for reinstatement for a period of 9 months.

2. Bonner may petition for reinstatement under Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility and satisfaction of continuing legal education requirements. *See* Rule 18(e)-(f), RLPR.

3. If Bonner is reinstated, he shall be subject to supervised probation under such terms and for a period of time as the court may then impose.

4. If Bonner is reinstated, any operation by Bonner of an IRA plan or account, or similar investment vehicle, for the benefit of any persons employed by Bonner or an entity owned or operated by Bonner, shall be pursuant to such reasonable terms and conditions as shall be required by the Director.

5. Bonner shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs, *see* Rule 24(a), RLPR.

CHUTICH, MCKEIG JJ., took no part in the consideration or decision of this case.